EINGARTNER, Appellant, vs. THE ILLINOIS STEEL COMPANY, Respondent.

*September 4 — October 13, 1896.*

*Constitutional law: Privileges and immunities of citizens: Right to sue in another state: Comity: Conflict of laws: Master and servant: Negligence of fellow-servant.*

1. Under sec. 2, art. IV, Const. of U. S., a citizen of one state has the same right to bring and maintain an action in the courts of another state, upon a cause of action arising in the former state and against a citizen thereof, as has a citizen of the state in which the action is brought; and the court has no discretionary power to dismiss the action merely because the parties are both residents of, and the cause of action arose in, another state. CASSODAY, C. J., dissents, being of the opinion that the right, in such a case, to maintain the action in the courts of another state is not an absolute constitutional right, but is governed by the principles of interstate comity.

2. A transitory cause of action, arising and becoming vested in one state under principles of the common law recognized in that state and another alike, may be enforced in the latter state, if jurisdiction of the person of the defendant be obtained. *Anderson v. M. & St. P. R. Co.* 37 Wis. 321, distinguished.

3. Although, in such a case, the right of action depends upon, and the court will be called upon to ascertain and apply, the law of the state in which the cause of action arose, yet the mere existence of a slight variance of view in the forum resorted to, not amounting to a fundamental difference of policy, is not a ground for refusing to entertain the action.

4. The law of the forum would prevail in such a case as to the form of the remedy, the conduct of the trial, and the rules of evidence.

5. A statute of limitations of the state in which the cause of action arose is not available in such a case unless put in evidence.

6. A "carpenter gang," whose duty it is to replace the planks about a machine called the "bloom rolls" after their removal for the purpose of attaching new rolls, are not fellow-servants of one employed to oil the machine, and their negligence in replacing the planks is the negligence of the employer.

APPEAL from a judgment of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Reversed.*

This is an action to recover for personal injuries suffered by plaintiff on the 4th day of September, 1891, in the defendant's rolling mill, in the city of Chicago, Ill.; the plaintiff being at that time and now a citizen of the state of Illinois, and the defendant being an Illinois corporation. The answer set up as a defense the citizenship of the parties in Illinois, and the fact that the accident had occurred in the state of Illinois, and that a law of the state of Illinois limited the time in which actions for personal injuries might be brought to two years after the happening thereof, and, therefore, that this action was barred by said statute. Upon the trial, after the plaintiff's evidence had been introduced, a peremptory nonsuit was granted.

It appeared by the evidence that at the time of the accident, and for some time prior thereto, the plaintiff was employed by the defendant in its rolling mill, and that his particular business was to oil a machine called the "bloom rolls." This was a large, heavy machine, standing three feet or more high from the floor, operated by steam power, and having upon one side a series of cogwheels meshed into each other. It appeared by the evidence that at intervals a section of the floor at the side of this machine, close to the series of cogwheels, had to be removed in order to put in new rolls. It further appeared that this removal of the floor was done by a separate gang of workmen, called the "sailor gang," and that, after the replacing of the rolls, the floor was put down again by another gang of workmen, called the "carpenter gang." Each of these gangs worked under a separate foreman. The evidence tends to show that plaintiff had nothing to do with either the taking up or the putting down of the floor, or with the work of either the sailor gang or the carpenter gang. The plaintiff testified that at the time of the accident he was about to oil the part of the machinery near the cogwheels; that he stepped upon the end of a loose plank in that part of the floor which

had to be removed when the rolls were changed, and the plank tipped up, thus throwing his right hand into the cogs, and severing it. The plaintiff's version of the transaction was to a certain extent corroborated by other employees who testified to seeing the loose board immediately after the accident. It appeared by the evidence that this section of the floor had been taken up, and the rolls changed, and the floor relaid, two or three days before the accident happened; that plaintiff was one of a night crew, working from 6 o'clock in the evening until 7 o'clock in the morning; and that he had to oil the machine every fifteen minutes or so, and was obliged to walk over this portion of the floor where the plank was loose every time, but that he had not noticed that the plank was loose. The accident happened just before 7 o'clock in the morning. The plaintiff also offered in evidence the following decisions of the supreme court of the state of Illinois: *Lake Shore & M. S. R. Co. v. Hessions*, 150 Ill. 546; *Lanark v. Dougherty*, 153 Ill. 165; *Wenona Coal Co. v. Holmquist*, 152 Ill. 581; *Libby, McN. & L. v. Scherman*, 146 Ill. 540; *Pullman Palace Car Co. v. Laack*, 143 Ill. 242.

At the close of the evidence, a motion for nonsuit was granted, and judgment was rendered dismissing the complaint upon the merits, for the following reasons: "*First.* Because it appears from the evidence that the occurrence out of which the alleged cause of action arose took place in the state of Illinois, and not in the state of Wisconsin; that both the plaintiff and defendant were at the time of such occurrence, ever since have been, and now are, residents of the state of Illinois, and not of the state of Wisconsin; that the alleged cause of action depends upon peculiar rules laid down by the courts of Illinois, which do not prevail in Wisconsin, and never have done, and which are hostile and obnoxious to the law of the state of Wisconsin, as interpreted by the courts thereof; and that this court, therefore, in this

action, is called upon to administer the laws of the state of Illinois, which it has no jurisdiction to do. *Second.* Because the plaintiff has wholly failed to show by evidence any negligence whatever on the part of the defendant which caused or contributed to the injury which is the basis of the action." From this judgment the plaintiff appealed.

For the appellant there was a brief by *J. W. Wegner*, attorney, and *C. H. Van Alstine*, of counsel, and oral argument by *Mr. Van Alstine*.

For the respondent there was a brief by *Van Dyke & Van Dyke & Carter*, and oral argument by *W. E. Carter.* They contended, *inter alia*, that the courts of this state are not bound absolutely to take jurisdiction in cases of this kind, but are vested with the sound discretion to take or refuse jurisdiction according to the circumstances of the case. *Gardner v. Thomas*, 14 Johns. 134; *Great Western R. Co. v. Miller*, 19 Mich. 305; *Morris v. M. P. R. Co.* 78 Tex. 17. Upon the question of how far the courts of one state will, in suits brought in them upon causes of action arising in another state between citizens of such other state, and depending for their existence upon peculiarities of the laws of such latter state, enforce such peculiar laws, the decisions seem to range themselves in three principal divisions: First, those which hold that a transitory cause of action, arising in one state under its laws, will be enforced in any other state, although as between her own citizens and the events from which it arose happening within her own borders, no cause of action would arise which her courts would recognize. *Dennick v. Railroad Co.* 103 U. S. 11; *Herrick v. M. & St. L. R. Co.* 31 Minn. 11. The second class of cases lays down the rule that a right of action arising at the common law, or under a statute of another state than that in whose courts it is sought to be enforced, will be sustained, if such latter state has a similar though not identical statute, so that, if the occurrence out of which it arose had happened

in the state of the forum, a right of action would also have arisen from it there. *Leonard v. Columbia S. N. Co.* 84 N. Y. 48; *Lower v. Segal,* 34 Atl. Rep. 945; *Wooden v. W. N. Y. & P. R. Co.* 126 N. Y. 10; *Knight v. W. J. R. Co.* 108 Pa. St. 250; *Morris v. C., R. I. & P. R. Co.* 65 Iowa, 727. The third class of cases holds that no action will lie in one state upon a right of action arising upon a statute of another state. *Anderson v. M. & St. P. R. Co.* 37 Wis. 321; *Texas & P. R. Co. v. Richards,* 68 Tex. 375; *Richardson v. N. Y. C. R. Co.* 98 Mass. 85; *Woodard v. M. S. & N. I. R. Co.* 10 Ohio St. 121; *St. Louis, I. M. & S. R. Co. v. Mc-Cormick,* 71 Tex. 660; *Belt v. G., C. & S. F. R. Co.* 4 Tex. Civ. App. 231; *Buckles v. Ellers,* 72 Ind. 220; *Taylor's Adm'r v. Penn. Co.* 78 Ky. 348; *Willis v. M. P. R. Co.* 61 Tex. 432. If this were an action based upon an Illinois statute it could not be maintained in this state. But it is not such an action, but depends upon the common law, which is, theoretically at least, the same wherever it exists at all. And what it is, one court has as much right to determine as another. *Krogg v. A. & W. P. R. Co.* 77 Ga. 202; 1 Kent, Comm. 470; *Coburn v. Harvey,* 18 Wis. 147; *Hough v. Railway Co.* 100 U. S. 213; *Gardner v. M. C. R. Co.* 150 id. 358, and cases cited.

WINSLOW, J. Two important questions arise in this case, viz.: (1) Whether the court could, in its discretion, dismiss the case because the parties were both residents of the state of Illinois and because the cause of action arose in the state of Illinois, jurisdiction of the person of the defendant having been obtained within this state; (2) if the court could not dismiss the case for this reason, then whether the evidence of the plaintiff was sufficient to entitle him to have the case submitted to the jury upon the merits. These questions will be considered in the order indicated.

This is an action to recover damages for injuries to the

person.  It is therefore purely a transitory action, and the principle that the courts of this state have jurisdiction to entertain such an action, although the cause arose in Illinois and the parties are residents of Illinois, is unquestioned. *Curtis v. Bradford*, 33 Wis. 190.  A court of this state would even have jurisdiction of a transitory action of this nature where it arose in a foreign country, or on the high seas, and both parties to the action were aliens, provided jurisdiction of the person could be obtained.  *Gardner v. Thomas*, 14 Johns. 134; *Johnson v. Dalton*, 1 Cow. 543; *Great W. R. Co. v. Miller*, 19 Mich. 312.  But, while it is held that a court has jurisdiction and may administer relief in an action between aliens brought upon a cause of action arising in foreign lands, it is also held that there is a certain discretion which may be used by the court in entertaining such actions, and that the court may dismiss such an action if, for any reason, it seems improper to take jurisdiction.  In the present case it is practically claimed by defendant that this rule applies to such an action as the present; in other words, that citizens of another state of this Union are to be treated in the courts of this state precisely as if they were aliens, and that a cause of action arising in another state is to be treated as though it arose in a foreign country; and this really is the first question to be settled.

It is provided by the constitution of the United States (sec. 2, art. IV) that "the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states."  The first attempt at a comprehensive definition of this clause of the federal constitution seems to be made in the case of *Corfield v. Coryell*, 4 Wash. C. C. 371, where Mr. Justice Washington, referring to this section of the constitution, says: "The inquiry is, What are the privileges and immunities of citizens of the several states?  We feel no hesitation in confining these expressions to those privileges and immunities which are in their nature funda-

mental, which belong of right to the citizens of all free governments, and which have at all times been enjoyed by the citizens of the several states which compose this Union, from the time of their becoming free, independent, and sovereign. . . . They may, however, be all comprehended under the following general heads: Protection by the government; the enjoyment of life and liberty, with the right to acquire and possess property of every kind, and to pursue and obtain happiness and safety; subject, nevertheless, to such restraints as the government may justly prescribe for the general good of the whole. The right of a citizen of one state to pass through or reside in any other state, for purposes of trade, agriculture, professional pursuits, or otherwise; to claim the benefit of the writ of *habeas corpus; to institute and maintain actions of every kind in the courts of the state;* to take, hold, and dispose of property, either real or personal; and an exemption from higher taxation and impositions than are paid by the citizens of the other state,— may be mentioned as some of the particular privileges and immunities of citizens which are clearly embraced by the general description of privileges deemed to be fundamental."

The subject was again considered in *Ward v. Maryland,* 12 Wall. 418, where it is said by Mr. Justice CLIFFORD, who wrote the opinion in that case, referring to the words "privileges and immunities" in this section: "Beyond doubt, these words are words of very comprehensive meaning, but it will be sufficient to say that the clause plainly and unmistakably secures and protects the right of a citizen of one state to pass into any other state of the Union for the purpose of engaging in lawful commerce, trade, or business, without molestation; to acquire personal property; to take and hold real estate; to maintain actions in the courts of the state; and to be exempt from any higher taxes or excises than are imposed by the state upon its own citizens." In referring to the same subject in *Paul v. Virginia,* 8 Wall. 168, Mr.

Justice FIELD, in the opinion of the court, after defining the object of the constitutional provision in question in quite similar terms, very aptly says: "It has been justly said that no provision in the constitution has tended so much to constitute the citizens of the United States one people as this."

These decisions are all referred to with approval in the opinion of the supreme court of the United States in the *Slaughter-House Cases,* 16 Wall. 36. See, on this same subject, the following cases, which are in harmony with the cases just quoted: *Lemmon v. People,* 20 N. Y. 608; *Campbell v. Morris,* 3 Har. & McH. 535. A case almost identical in its facts with the case before us is the case of *Cofrode v. Circuit Judge,* 79 Mich. 332, where this provision of the constitution of the United States is directly construed as guaranteeing the right to a citizen of another state to bring suits in the state of Michigan in any case where a citizen of Michigan was entitled to bring such suit. Indeed, we have been referred to no cases holding the contrary of this proposition, except, possibly, the case of *Morris v. M. P. R. Co.* 78 Tex. 17, where it was held that a Texas court might refuse to take jurisdiction of an action between a Choctaw Indian and a resident of another state, founded upon a cause of action accruing in another state. We do not, however, regard this case as of value as authority on this question, because it was held to be a local action, and not transitory. If this was the case, of course the courts of Texas could not entertain it, whatever the citizenship of the parties. Therefore, what is said at the close of the opinion with regard to the power of dismissing the case on account of the residence of the parties is *obiter.* Moreover, the question of the rights of a citizen of another state under the constitution could hardly arise in a case where the plaintiff was a member of an Indian tribe, and consequently not a citizen of any state.

Eingartner vs. The Illinois Steel Co.

We are entirely satisfied that one of the "privileges and immunities" referred to in the constitutional provision is the right to bring and maintain an action in the courts of the state. Any citizen of this state may bring an action in the circuit court of this state upon a transitory cause of action arising in another state, and against a citizen of another state, provided he can obtain jurisdiction of the person of the defendant in this state. This is one of the rights guaranteed him under our constitution and laws. If the words "privileges and immunities" in the constitutional clause in question refer to the right to maintain actions, then a resident of another state has the same right to bring an action in the courts of this state upon a cause of action arising in another state, and against a citizen of another state, that a citizen of this state has, because the constitution guarantees him the same right as a citizen of this state. We entirely approve the doctrine held by the supreme court of Michigan in *Cofrode v. Circuit Judge*, 79 Mich. 332, and therefore hold that the trial court could not dismiss this action merely because the parties were both citizens of Illinois, and the cause of action arose in Illinois.

The question then arises whether the court was right in dismissing the case on the merits, either because no cause of action was proven, or on account of the supposed conflict of the laws of Illinois and Wisconsin.

This court has held, as we have seen, that an action to recover for personal injuries negligently inflicted in another state is a transitory action, and is triable in the courts of this state, provided jurisdiction of the person is obtained. *Curtis v. Bradford*, 33 Wis. 190. This doctrine is in accord with the decisions everywhere, and it is unnecessary to cite authorities. Another rule has been applied, however, by some of the decisions, with regard to actions founded on a statute of another state where such statute is inconsistent with the law of the forum. Thus, it has been held by this

court in *Anderson v. M. & St. P. R. Co.* 37 Wis. 321, that the courts of this state will not enforce a cause of action arising in Iowa under a statute of that state making an employer liable to his employee for injuries suffered by reason of the negligence of his fellow-servant, because it was the settled law of this state at that time that such an action would not lie.    For cases holding similar doctrine, see Story, Conflict of Laws (8th ed.), 844, § 625, note *a; Richardson v. N. Y. C. R. Co.* 98 Mass. 85.    This doctrine has been substantially disapproved by the supreme court of the United States, and by some other courts.    *Dennick v. Railroad Co.* 103 U. S. 11; *Herrick v. M. & St. L. R. Co.* 31 Minn. 11.    The question, however, does not arise in this case, and hence it is unnecessary to consider upon which side the weight of reason and authority preponderates.    The present action is not founded upon any statute of one state not existing in others, but upon certain fundamental and well-settled principles of the common law which prevail in most states of the Union.    The principles involved are, briefly:

(1)  Ordinary negligence by one person, proximately causing personal injury to another, to whom the first owes a duty of care, raises a right of action in the person injured.

(2)  In order to recover for such injuries, the injured person must himself have been in the exercise of ordinary care at the time of the injury.

(3)  A servant cannot recover damages of his master for injuries caused solely by the negligence of his fellow-servant.

(4)  When the master undertakes to furnish the servant a place to work, with the preparation of which place the servant has nothing to do, then it is the master's duty to furnish a reasonably safe place to work, and this duty cannot be delegated; and the servant who prepares such place for work is not, in the eye of the law, a fellow-servant with the other.

These principles are well established in this state, and the

decisions of the supreme court of Illinois offered in evidence on the trial show that they are recognized in that state. *Lake Shore & M. S. R. Co. v. Hessions,* 150 Ill. 546; *Pullman Palace Car Co. v. Laack,* 143 Ill. 242; *Libby, McN. & L. v. Scherman,* 146 Ill. 540.

Now, the complaint in the present case clearly states a cause of action under the common law for negligence, and the plaintiff's evidence was sufficient to go to the jury under the foregoing principles of the common law, recognized alike in both states. The evidence, in brief, tended to show that the floor upon which the plaintiff tripped was a place for him to work in, with the preparation of which he had no duty to perform. If this was so, then, under the principles laid down in *Cadden v. Am. S. B. Co.* 88 Wis. 409, and *Libby, McN. & L. v. Scherman,* 146 Ill. 540, we think the "carpenter gang," whose duty it was to replace the planks, were not fellow-servants of the plaintiff. If they were not fellow-servants, but were simply discharging a duty of the master, then, if they left the plank in question loose, and the plaintiff, without contributory negligence, suffered injury thereby, their failure was failure of the master, under the principles settled in the last-named cases.

We are not to be understood as attempting in advance to lay down rules for the retrial of this case. We have proceeded thus far in the discussion of certain fundamental principles of the law of negligence for the purpose simply of showing that upon these questions, which are the leading and important questions in this case, the law as expounded by the courts of last resort in both states is in substantial accord. The case, then, is this: A transitory cause of action arose and became vested in Illinois, under principles of the common law recognized in both Illinois and Wisconsin alike; and the question is, Can it be prosecuted to judgment in the courts of Wisconsin, jurisdiction of the person having been obtained? We are clearly of the opinion that there

can be but one answer to this question, and that in the affirmative.

It is said, however, that there are some differences in the law as administered in the two states with reference to the question of whether a person employed by the same master is a fellow-servant or a vice-principal, and that in this respect the laws of Illinois are more favorable to the plaintiff than those of Wisconsin. Upon this basis the trial court held that the case depended upon principles of law which are obnoxious to the law of this state, and that it had no jurisdiction to administer the law of Illinois. It is well known that courts are frequently called upon to administer and enforce the laws of another state. Doubtless upon the trial of this case the plaintiff's right of action will depend upon the law of Illinois as it shall be shown to be. There is no inherent difficulty in finding out or applying the legal principles governing the cause of action in Illinois when the accident happened. The same objection was made in the case of *Walsh v. N. Y. & N. E. R. Co.* 160 Mass. 571, and was overruled. We fully agree with what was there said by HOLMES, J., in the opinion of the court: "As between the states of this Union, when a transitory cause of action has vested in one of them under the common law as there understood and administered, the mere existence of a slight variance of view in the forum resorted to, not amounting to a fundamental difference of policy, should not prevent an enforcement of the obligation admitted to have arisen by the law which governed the conduct of the parties." Thus far we go in the present case, and, going thus far, we hold that the trial court should have entertained and tried the case. As to the form of the remedy, the conduct of the trial, and the rules of evidence, the law of the forum would unquestionably prevail.

An Illinois statute of limitations was set up in the answer as a defense, but the statute was not offered in evidence.

Eingartner vs. The Illinois Steel Co.

Consequently, the question as to its effect upon the plaintiff's cause of action in this suit was not before the court below, is not before us, and hence is not decided.

*By the Court.*— Judgment reversed, and action remanded for a new trial.

CASSODAY, C. J.   I fully concur in the reversal of the judgment in this case, and much that is contained in the opinion of my Brother WINSLOW.   The only question I desire here to consider is as to whether the plaintiff has the absolute right to bring and maintain this action under the clause of the constitution of the United States which declares that " the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." Sec. 2, art. IV.

The only case cited by counsel, or which any of us have been able to find, so holding, in a case similar to this, is *Cofrode v. Circuit Judge*, 79 Mich. 332, and in that case Mr. Justice CAMPBELL dissented.   Besides, that was a proceeding by *mandamus* to compel the court to entertain a case arising under a contract for the construction of a railroad in Michigan.   That case was decided after Mr. Justice COOLEY had left the bench.   According to that learned author, the precise meaning of " privileges and immunities " is not as yet very conclusively settled.   Cooley, Const. Lim. (6th ed.), 490.   The supreme court of the United States — the final arbiter — has not, it would seem, determined the precise question suggested, although that court has many times considered the clause of the constitution mentioned. Mr. Story says: " The intention of this clause was to confer on them [citizens], if one may so say, a general citizenship, and to communicate all the privileges and immunities which the *citizens of the same state* would be entitled to *under the like circumstances.*"   2 Story, Const. § 1806.   Mr. Hare says that " the clause in question adds nothing to the rights given

and restraints laid by the other articles of the constitution, except that the rules made by each state with regard to the citizens of her sister states must be the same as those which she imposes *on her own citizens.*" 1 Hare, Am. Const. Law, 513.

In *Paul v. Virginia,* 8 Wall. 180, Mr. Justice FIELD said: "But the privileges and immunities secured to citizens of each state in the several states, by the provision in question, are those privileges and immunities which are common to the citizens *in the latter states, under* their constitution and laws, by virtue of their being citizens. Special privileges enjoyed by citizens in their own states are not secured in other states by this provision. It was not intended by the provision *to give to the laws of one state any operation in other states.* They can have no such operation except by the *permission, express or implied, of those states.*" The definition thus given was sanctioned by Mr. Justice MILLER in the *Slaughter-House Cases,* 16 Wall. 76–77, and he there added: "The constitutional provision there alluded to *did not create* those rights which it called privileges and immunities of citizens of the states. It threw around them in that clause no security for the citizen of the state in which they were claimed or exercised. Nor did it profess to control the power of the state governments over the rights of its own citizens. Its sole purpose was to declare to the several states that whatever those rights, as you grant or establish them *to your own citizens,* or as you limit or qualify or impose restrictions on their exercise, *the same,* neither more nor less, *shall be the measure* of the rights of citizens of other states within your jurisdiction." Many similar expressions have emanated from the same tribunal.

In addition to the enforcement of the criminal laws and police regulations as to persons and property within the state, the principal functions of a state government would seem to be to make and enforce laws for and against its

Eingartner vs. The Illinois Steel Co.

own citizens, and for and against property and rights of property located or having a *situs* therein. The party to such a controversy, although a nonresident and a citizen of another state, undoubtedly has the same "privileges and immunities" as a party who is a citizen of the same state; otherwise, the administration of the law would be partial and unjust. But, in my judgment, the case at bar does not come within the letter or spirit of the constitutional guaranty mentioned. Since this state has no power to authorize an action to be commenced. and maintained by one of its own citizens against another of its own citizens, in the courts of any other state, in respect to a tort committed in this state, it necessarily follows that the courts of this state are not arbitrarily bound, by the constitutional provision quoted, to entertain jurisdiction of a suit commenced by one citizen and resident of Illinois against another citizen and resident or corporation of Illinois, when the only controversy is in regard to a tort committed in Illinois, unless that clause requires this state to grant "privileges and immunities" to citizens of other states which it has no power to grant to its own citizens "under the like circumstances." This, as shown, would be contrary to the authorities cited. To avoid such an anomaly, according to Mr. Story, the wording of the corresponding clause in the old Articles of Confederation was purposely changed to its present form. 2 Story, Const. § 1805. Actions like the one at bar are generally governed by the principles of interstate comity. Cooley, Const. Lim. (6th ed.), 150, 151. This court has recently not only recognized but sanctioned such principles of interstate comity, in an opinion by Mr. Justice PINNEY. *Gilman v. Ketcham*, 84 Wis. 60. Thus, in *National Tel. Mfg. Co. v. Du Bois*, 165 Mass. 117, it is held that "to a foreign corporation having a place of business here, and suing a citizen of another state, the courts of equity in this commonwealth are *not open as a matter of strict right, but as a matter of*

*comity.*"  In *Smith v. Mut. L. Ins. Co.* 14 Allen, 336, it was held that "this court will not entertain jurisdiction of a bill in equity brought by a citizen of Alabama, who has never lived here, against an incorporated mutual life insurance company of New York, seeking to restore him to his rights under a policy issued by the defendants in New York upon his life, he having failed to pay the premiums required by the terms of the policy; although the defendants transact business in this commonwealth, and have appointed an agent resident here upon whom all lawful processes against the company may be served." To the same effect, *Bank of N. A. v. Rindge,* 154 Mass. 203; *Kimball v. St. L. & S. F. R. Co.* 157 Mass. 7; *Renier v. Hurlbut,* 81 Wis. 24. Numerous other cases might be cited to the same effect.

It may be conceded that an action for a tort to the person may generally be maintained in any jurisdiction in which the defendant can be legally served with process. It seems to be essential, however, that the wrong complained of, although actionable according to the law of the state where the action is brought, should also be actionable according to the law of the state or country in which it occurred or was committed. Dicey, Conflict of Laws, 667, and cases there cited. In actions at common law this identity or similarity of law is assumed to exist in the absence of reasons to the contrary. Id., citing *Walsh v. N. Y. & N. E. R. Co.* 160 Mass. 571. In statutory actions it is held that "if the foreign law is a penal statute, or if it offends our own policy, or is repugnant to justice or to good morals, or is calculated to injure this state or its citizens, or if we have not jurisdiction of parties who must be brought in to enable us to give a satisfactory remedy, or if, under our forms of procedure, an action here cannot give a substantial remedy, we are at liberty to decline jurisdiction." *Higgins v. C. N. E. & W. R. Co.* 155 Mass. 180, and cases there cited.

In considering sec. 1 of art. IV of the constitution of the United States, FULLER, C. J., speaking for the majority of the court, said: "The constitution did *not mean to confer any new power on the states,* but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory." *Cole v. Cunningham,* 133 U. S. 112, affirming *Cunningham v. Butler,* 142 Mass. 47. He then said: "The intention of sec. 2 of art. IV was to confer on the citizens of the several states a general citizenship, and to communicate all the privileges and immunities which the *citizens of the same state* would be entitled to *under the like circumstances,* and this includes the right to institute actions. The fact of the citizenship of Butler and Hayden did not affect their privilege to sue in New York, and have the full use and⁰ benefit of the courts of that state in the assertion of their legal rights; but, as that fact might affect the right of action as between them and the citizens of their own state, the courts of New York might have held that its existence put an end to the seizure of their debtor's property by Butler, Hayden & Co., in New York. If, however, those courts declined to take that view, it would not follow that the courts of Massachusetts violated any privilege or immunity of Massachusetts' own citizens in exercising their undoubted jurisdiction over them." The learned chief justice then goes on at great length, and shows by the citation of numerous adjudications that since the litigants were both citizens of Massachusetts, and subject to the jurisdiction of its courts, one of them might be restrained from prosecuting an action previously commenced in New York to collect a debt by garnishment therein. The opinion is replete with learning and authorities to the effect that, where both parties to the controversy are citizens and residents of the same state, one may restrain the other from prosecuting a suit against him in some other state, and in fraud of the laws of the state where they both reside. If the constitution of the

United States gives to every party to a transitory action the absolute right to commence and maintain the same in any state of the Union where he can get service on the defendant, then it is difficult to perceive upon what theory they can be restrained from exercising such constitutional right. In several of the states a nonresident is required by statute to give security for costs as a condition precedent to commencing or maintaining a suit, when no such requirement is made of a resident plaintiff; and the validity of such statutes have been sustained. Reno, Nonresidents, 44, 45. If such authorities are sound, then it is difficult to perceive how the right to bring and maintain the suit can be regarded as an absolute constitutional right. If the constitutional clause in question gave to the plaintiff the absolute right to commence and maintain this action, then it would seem that the state courts have generally, and for a century, labored under a grave misapprehension in holding that jurisdiction in such cases was governed by the principles of interstate comity.

This hasty expression of opinion is merely to indicate the grounds on which I differ from the opinion filed.

As to the constitutional equality of privileges and immunities in respect to litigation, see note to *Louisville S. V. & T. Co. (Schoolcraft's Adm'r) v. L. & N. R. Co.* (92 Ky. 233) in 14 L. R. A. 583. — REP.