GORSEGNER, Respondent, vs. BURNHAM, imp., Appellant.

*March 18—April 5, 1910.*

*Master and servant: Unsafe working place: Duty of master: Repairs:
Concurrent negligence of fellow-servant: Appeal: Orders review-
able.*

1. The duty of the master to make the working place of a servant
reasonably safe does not cease because of the fact that repairs
are in progress upon the structure in which the work is being
done, where the servant is not himself participating in the mak-
ing of such repairs.

2. The master is liable for injuries to a servant caused by the neg-
ligence of a fellow-servant where such negligence was merely
concurrent with and rendered effective by a defect in the place
of work.

3. An appeal from an order does not bring up for review other or-
ders made in the same action.

APPEAL from an order of the circuit court for Milwaukee
county: W. J. TURNER, Circuit Judge. *Affirmed.*

The defendant owned and operated a brickyard consisting
of a series of ovens or chambers ten or twelve feet in height,
thirty feet long, and fifteen feet wide, composed of arches
constructed of fire brick in which brick were placed to be
baked and, of course, when baked were removed. Plaintiff
was a common laborer, of mature age and considerable ex-
perience, whose work included the removal of the brick from
these arched ovens. At the time in question one of the
arches was found to have been weakened by fire and it was
determined to pull down and rebuild about three fifths of it
in width. Meanwhile the remaining two fifths had been
braced by planks running longitudinally and supported by
posts, such planks being approximately one foot in width
and leaving unsupported spaces between them about fifteen
inches in width. The defective side of the arch had been
torn down preparatory to rebuilding. It does not appear by
whom such work had been done nor how long before the ac-

cident.   Plaintiff, in the course of his work, was sent into
this chamber to wheel away the old brick therein; whether
the merchantable brick which had been baked therein, or the
old fire brick of the arch which had been torn down, does not
appear.    While engaged in such work some portion of the
old arch, together with the covering of clay, fell in upon him
and caused his immediate death.   There is evidence that
some work on top of the arch and outside was in progress,
and it is contended by appellant that one of the men negli-
gently stepped on the weakened arch and caused its collapse.

At the close of plaintiff's evidence defendant's motion for
a nonsuit was granted and jury discharged.   Before entry
of judgment plaintiff moved to vacate such order for nonsuit
and to grant a new trial, which motion was granted on the
ground that upon review of the evidence the trial court was
of the opinion that there should have been submitted to the
jury the question as to whether the remaining portion of the
arch was so properly supported as to make the place where
the decedent was put at work reasonably safe, in view of
evidence of the existence of an extended crack therein.
From the order granting a new trial the defendant *John Q.
Burnham* appeals.

For the appellant there was a brief by *Doe & Ballhorn,*
and oral argument by *J. B. Doe.*

For the respondent there was a brief by *Ryan, Ogden &
Bottum,* attorneys, and *Hugh Ryan,* of counsel, and oral ar-
gument by *Mr. Ryan.*

DODGE, J.   There was evidence tending to establish that
the chamber in which deceased was at work was a permanent
structure prepared by the master and in which employees
were expected to perform labor in no wise connected with
either the construction, repair, or maintenance of the build-
ing, from which would result to the master the duty to make
it reasonably safe for the performance of such labor.   *Ein-*

*gartner v. Ill. S. Co.* 94 Wis. 70, 68 N. W. 664; *Lipsky v. C. Reiss C. Co.* 136 Wis. 307, 117 N. W. 803. This duty in no wise ceased because of the fact that repairs were in progress. That, at most, would be one of the circumstances bearing on the question of what would constitute reasonable safety and on the measure of notice to an employee of the existence of some defects or perils. The duty persisted to make the place reasonably safe. We are convinced that the trial court might well have found evidence which would justify submission to the jury of the question whether the roof as it existed upon the morning when decedent was directed to do work under it was reasonably safe, in view of the evidence of an extensive crack therein and of the degree and manner of shoring up which existed. Indeed, one witness testified that if he had known of the crack he would not have considered the bracing of the roof sufficient for safety. There is no direct evidence that the deceased had any knowledge of these perils, and the conditions surrounding his work are left in so much of confusion that the trial court might well have hesitated to charge him as matter of law with such knowledge as to impute to him assumption of the risk. We do not ignore that modification of the master's duty to provide a safe place in the case of workmen together engaged in gradually altering such place of work, as in the case of construction or repair, illustrated in such cases as *Kath v. Wis. Cent. R. Co.* 121 Wis. 503, 99 N. W. 217; *Walaszewski v. Schoknecht,* 127 Wis. 376, 106 N. W. 1070; and *Strehlau v. John Schroeder L. Co., ante,* p. 215, 125 N. W. 429. But the evidence is by no means clear that the decedent's employment had any connection whatever with either the demolition, the shoring up, or the re-erection of this arch; indeed it tends to show that the reconstruction was being performed by independent contractors with whom decedent had no connection, and that the particular portion of the work consisting in the tearing down of a part and shoring up of the other

part had been done some days before without decedent's participation therein.

Another fact pressed on our notice by the appellant is that some one engaged in assisting the masons, who were building another part of the arch, caused the collapse by stepping on the weakened portion. But there was evidence that it was customary for employees to pass over these arches, from which would result the duty of the master to contemplate such acts in performing its duty to properly support such roof for the safety of those who might have occasion to work under it. Further than this, however, the rule is thoroughly well established that even negligence of a fellow-servant, when merely concurrent with and rendered effective by a defect in the place of work, makes the master liable. *Winchel v. Goodyear,* 126 Wis. 271, 105 N. W. 824; *Howard v. Beldenville L. Co.* 129 Wis. 98, 99, 108 N. W. 48; *Herring v. E. I. Du Pont de Nemours P. Co.* 139 Wis. 412, 121 N. W. 170. As a result of the examination of the entire record we are unable to say, with the certainty requisite to the reversal of a trial court's decision upon evidence, that there was none to establish the defendant's negligence and consequent liability, nor that either assumption of the risk or contributory negligence on the part of the deceased was established beyond controversy.

Error is assigned upon allowance of an amendment of the complaint to allege that appellant and Charles T. Burnham were copartners and as such conducted the business in which decedent suffered his death. Just how the appellant was prejudiced by such ruling is not obvious, since his authority in conducting the business was not disputed, and he would be equally liable whether sued separately or jointly with another. But we cannot authoritatively decide the question of error in one order when the appeal is from a different one not dependent on the former. An appeal from an order does not bring up for review other orders made in the same

action.  *Flanagan v. C. & N. W. R. Co.* 45 Wis. 98; *Breed v. Ketchum,* 51 Wis. 164, 7 N. W. 550; *Linden L. Co. v. Milwaukee E. R. & L. Co.* 107 Wis. 493, 501, 83 N. W. 851.

*By the Court.*—Order appealed from is affirmed.