SCIECZINSKI, Respondent, vs. FILER & STOWELL COMPANY, Appellant.

*November 18—December 5, 1911.*

*Master and servant: Injury: Unsafe working place: Evidence: Negligence of fellow-servants: Making repairs: Assumption of risk: Appeal: Review: Findings by jury: Trial: Special verdict: Damages.*

1. While engaged in removing slag from the cupola room of defendant's foundry, plaintiff was injured by the fall of a pile of brick in such room, intended for future use in lining the cupola. Evidence showing, among other things, that the brick fell because piled too high, not because of negligence in the laying or placing of them in the pile; that defendant had designated the place for piling and the quantity of brick to be piled, but that such quantity would not fit in that place unless piled to a dangerous height; and that shortly before the injury the defendant's foreman in charge of placing the brick had passed through the room and close to the pile but did not notice it, is *held* sufficient to sustain a recovery upon the ground of defendant's failure to exercise reasonable care to keep the place reasonably safe.

2. The facts that plaintiff and the men who piled the brick spoke no common language and could communicate only by signs, and that they usually worked in different gangs under separate foremen and at different classes of work, are significant only as bearing upon the contributory negligence of plaintiff and tending to show that he took no active part in making the place unsafe.

3. Determining as to the quantity of brick to be piled and the place and manner of piling was part and parcel of the master's duty to use reasonable care to maintain a safe place, and if there was a failure in that duty the negligence of a fellow-servant co-operating would not bar a recovery.

4. The duty of the master to keep the place safe did not cease merely because repairs were being made by the use of the brick, where the injured servant was not himself at the time participating in the making of such repairs.

5. The verdict acquitting plaintiff of assumption of risk and contributory negligence, supported by evidence or by the lack of evidence to the contrary, will not be disturbed on appeal.

6. Under the circumstances stated, plaintiff was charged only with reasonable care for his own safety and to notice obvious dangers; and it cannot be said that the danger from the piling of the brick was so obvious to an untrained mind engrossed in other work as to require a holding, as matter of law, that plaintiff assumed the risk.

7. A finding by the jury that the place was not reasonably safe lost none of its legal effect by reason of another finding that the pile of brick was not reasonably safe; nor did the latter finding or the submission of the question confuse the trial or issues or prejudicially affect the defendant.

8. An award of $11,000, reduced by the trial court from $15,000, for very severe injuries permanently incapacitating a man forty-seven years old, is *held*, though large, not so excessive as to call for interference by this court.

MARSHALL, J., dissents.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

*Casimir Gonski,* attorney, and *C. H. Hamilton,* of counsel, for the respondent, cited, in addition to Wisconsin cases, *Kreigh v. Westinghouse, C., K. & Co.* 214 U. S. 249, 256, 29 Sup. Ct. 619; *Choctaw, O. & G. R. R. Co. v. McDade,* 191 U. S. 64, 66, 24 Sup. Ct. 24; *Santa Fe Pac. R. Co. v. Holmes,* 202 U. S. 438, 26 Sup. Ct. 676; *Schminkey v. Sinclair & Co.* 137 Iowa, 130, 114 N. W. 612; *Stephens v. Hudson Valley K. Co.* 69 Hun, 375; *Freeman v. Glens Falls P. M. Co.* 61 Hun,

125, 15 N. Y. Supp. 657; *Cullen v. Norton,* 52 Hun, 9; *Blondin v. Oolitic Q. Co.* 11 Ind. App. 395, 37 N. E. 812; *Rigsby v. Oil Well S. Co.* 115 Mo. App. 297, 91 S. W. 460; *S. C.* 130 Mo. App. 128, 108 S. W. 1128; *Chicago H. & B. Co. v. Mueller,* 203 Ill. 558, 68 N. E. 51; *Fogarty v. St. Louis T. Co.* 180 Mo. 490, 515, 79 S. W. 664; *Uren v. Golden T. M. Co.* 24 Wash. 261, 64 Pac. 174; *Zintek v. Stimson M. Co.* 9 Wash. 395, 37 Pac. 340; *N. W. Fuel Co. v. Danielson,* 57 Fed. 915; *Sanborn v. Madera F. & T. Co.* 70 Cal. 261, 11 Pac. 710.

TIMLIN, J.   A pile of brick in the cupola room of defendant's foundry fell upon plaintiff, injuring him severely, while he was in the employment of defendant and engaged in removing with a wheelbarrow slag and cinders from this room. The room was so small in proportion to the quantity of brick required to be piled therein that the brick pile extended from the square frame at the bottom of the cupola to the door of the room, a length of about eight feet, and piled three brick or twenty-four inches wide would be about the limit of width which could be had, leaving room to open the said door and leaving space for plaintiff to work.   With what brick there was already piled in this room the quantity brought in on the occasion in question raised the pile of the stated width and length to about twelve feet in height.   The floor of this room was a bed of dirt and cinders, concave in the center, with a slight slant if any from the walls toward this center.   The defendant designated the place upon this floor where the brick should be piled and the quantity of brick to be piled.   There was, prior to the time in question, some brick in this room and at this place, forming a low pile of similar width.   The brick kept in this room as well as the brick brought in upon the occasion in question was fire-brick, kept there and brought there for the purpose of lining the cupola.   This was relined every six months, and there was during the six-months inter-

vals an occasional necessity for patching this brick lining.
Relining was contemplated at some indefinite future time
when the fire-brick was brought in and piled, on September 17
and 18, 1907; but no relining was then in progress.    This
cupola room, the cupola itself, and the men employed therein
and thereabouts, were under the charge and superintendence
of the foreman, Barbier, whose duty it was to have the fire-
brick ready in the cupola room for use when needed.    Barbier
made a requisition for brick upon Kramer, the yard foreman,
and the latter detailed two Greek workmen to bring the brick
from the yard into the cupola room with wheelbarrows.    The
plaintiff did his wheelbarrow work removing the slag in the
forenoon and worked at other cupola work in the afternoon.
The Greeks did their wheelbarrow work bringing in brick in
the afternoon and piled the brick or did yard work in the fore-
noon, and did no cupola work.    This was because the room and
its entrance were so narrow that two wheelbarrow crews could
not work at the same time.    The Greeks and the plaintiff, who
was a Pole, spoke no common language and could communi-
cate only by signs.    In the forenoon of September 18th,
while the Greeks were engaged in piling up the brick they
had brought in and the plaintiff with one Pitulski was en-
gaged in wheeling out slag, the brick pile in the cupola room,
which had reached a height of from ten to twelve feet and of
the length and width before stated, suddenly toppled over on
plaintiff.    The jury found that the pile of brick was not rea-
sonably safe and that the place was not reasonably safe; that
the defendant ought in the exercise of ordinary care to have
known of this, and was guilty of a want of ordinary care
which was the proximate cause of plaintiff's injuries.    The
court added two findings resting upon undisputed evidence,
viz.: that the location of the brick pile was designated by de-
fendant, and that the unsafe condition of the brick pile was
caused by the height to which the brick were piled.    The jury

found for the plaintiff upon the questions of assumption of risk and contributory negligence.

It is argued that a nonsuit should have been granted or a verdict for defendant directed as requested at the trial. We cannot upon the evidence relating to defendant's liability, which is practically without dispute, so hold. The quantity of brick to be placed in this small room on the floor or foundation there existing and the place where it was piled and the manner of piling it were under the command and supervision of the foreman, Barbier. The pile fell from some cause. There is no evidence that the laying or placing of the brick in the pile by the Greeks was negligently or imperfectly done. In short, the finding of the court that the brick fell because it was piled too high rather negatives this, if a negative was needed for such a fact which does not appear by evidence. The defendant provided these small and cramped quarters, fixed the quantity of brick to be piled therein, and designated the place where it should be piled. That quantity would not fit in that place unless it was piled to this dangerous height. The defendant's foreman in charge of the placing of this brick passed through the cupola room and close by this pile of brick shortly before the injury, but claims his mind was engrossed with other matters and he did not notice the pile, and these duties all related to and were part and parcel of the master's duty to use reasonable care to maintain a safe place. In this view the question whether or not the Greeks were fellow-servants of the plaintiff becomes immaterial. That the Greeks and the plaintiff were members of different gangs, each under a different foreman usually, and not engaged in exactly the same work, is only significant as bearing upon the contributory negligence of the plaintiff as showing that he himself took no active part in making the place unsafe. The recovery here may be based on the failure of the master to exercise reasonable care to keep the place reasonably safe.

In *Hulehan v. G. B., W. & St. P. R. Co.* 68 Wis. 520, 32 N. W. 529, judgment for plaintiff was affirmed upon a special verdict finding: (1) The injuries complained of were caused by the negligence of the defendant; (2) this negligence consisted in allowing sticks or blocks of wood to remain along the track; (3) these sticks or blocks of wood had remained for several days prior to the injury; (5) the sticks or blocks of wood along the track were allowed to fall there by employees on the train in loading the tender; (6) it was the duty of defendant's section foreman to remove the blocks and sticks. For other cases where the neglect of a fellow-servant co-operating with the failure of the master to furnish or maintain a safe place produced the injury, see *Driscoll v. Allis-Chalmers Co.* 144 Wis. 451, 129 N. W. 401; *Mulcairns v. Janesville,* 67 Wis. 24, 29 N. W. 565; *Halwas v. American G. Co.* 141 Wis. 127, 123 N. W. 789; *Rankel v. Buckstaff-Edwards Co.* 138 Wis. 442, 120 N. W. 269; *Eingartner v. Ill. S. Co.* 94 Wis. 70, 68 N. W. 664; *Beach v. Bird & W. L. Co.* 135 Wis. 550, 116 N. W. 245; *Sparling v. U. S. S. Co.* 136 Wis. 509, 117 N. W. 1055. Because repairs were contemplated consisting of relining the cupola, the duty of the master to keep the place safe did not cease where the injured servant was not himself at the time participating in the making of such repairs. "That at most would be one of the circumstances bearing on the question of what would constitute reasonable safety and on the measure of notice to an employee of the existence of some defects or perils." *Gorsegner v. Burnham,* 142 Wis. 486, 125 N. W. 914. The answers of the jury to the effect that the pile of brick was not reasonably safe and that the place where the plaintiff was injured was not reasonably safe, therefore have support in the evidence and cannot be disturbed. That portion of the verdict acquitting the plaintiff of assumption of risk and contributory negligence also rests upon evidence and lack of evidence to the contrary and must be allowed to stand. We must bear in mind that

here the burden of proof is upon defendant. From the evidence submitted it does not follow as matter of law that the plaintiff knew or ought to have known what quantity of brick was required to be piled here or when the quota to be piled would be filled and further piling cease. He probably did not know until the last wheelbarrowful was brought how many brick were coming in, nor until the last course was laid how high the pile would grow, nor the resistance of the floor. All of these were matters which the master, if he performed his duty, might in the exercise of ordinary care be required to consider, while they might not be so apparent to the plaintiff, who was only charged with reasonable care for his own safety and to notice obvious dangers. Whether this pile of brick on this floor would fall at ten, eleven, or twelve feet height was not so obvious to an untrained mind engrossed in other work as to require us to set aside or disregard the verdict of the jury acquitting the plaintiff of assumption of risk. It is impossible to say definitely at what time this pile became dangerous nor how long the plaintiff worked in proximity to it thereafter. We cannot disturb the verdict on this ground. We perceive no material or prejudicial error in the form of the questions submitted to the jury. The finding that the place was not reasonably safe cannot lose its legal potency or effect because of the additional finding that the pile of brick was not reasonably safe, nor did the latter finding or the submission thereof, in our view, confuse the trial or issues or prejudicially affect the defendant. There are some verbal lapses in the instructions, but none of serious consequence and none sufficiently prejudicial to call for reversal. It would do no good to discuss them here, because they do not indicate any legal heresy but merely a careless use of language.

The damages found by the jury, $15,000, were reduced by the circuit judge to $11,000. We would have been better satisfied with a greater reduction. But upon this matter the

learned trial judge and the jury have exercised judgment and there is and always will be different opinions as to the proper amount of damages in such cases. Here the injuries are no doubt very severe. We have in the instant case no unanimity as to the proper amount. We are unable to say that the judgment and experience of the learned trial court were so far out of the way as to call for further interference on the part of this court with the verdict.

*By the Court.*—Judgment affirmed.

The following opinion was filed December 15, 1911:

MARSHALL, J. (*dissenting*). I am not satisfied the basic ground for recovery found by this court is legitimate. I must now and then raise my voice against what seems to me **a** judicial refinement of logic, changing the law of negligence as regards who are fellow-servants. That law existed when the state was admitted into the Union and is a part of the written law,—more dignified than any mere legislative enactment, because of having been made one of the fundamentals by sec. 13, art. XIV, of the constitution. If, as so established, it is not appropriate to present conditions, the power to change it is in the legislature, not only because not taken away by the constitution, but because expressly therein reserved. The court has no more right to vary it in any particular than to legislate in respect to any other matter.

As I had occasion to say on another occasion (*Borgnis v. Falk Co., ante,* p. 327, 133 N. W. 209), the legislature has had ample power to deal with the subject of defenses in the law of negligence for more than sixty years, and till very recently did not attempt it at all. The law as it came to us, as I understand it, is stated at length in my opinion in *Rankel v. Buckstaff-Edwards Co.* 138 Wis. 442, 120 N. W. 269, and again in *Halwas v. American G. Co.* 141 Wis. 127, 123 N. W. 789. There I was compelled to dissent and speak inde-

pendently. The law as stated in my opinion is according to common-law principles in the beginning. It was many times applied by the court before those cases were decided and has been since, notably in *Knudsen v. La Crosse S. Co.* 145 Wis. 394, 130 N. W. 519, and *Strehlau v. John Schroeder L. Co.* 142 Wis. 215, 125 N. W. 429. If it should be changed, and I would not suggest to the contrary, then that should be done by the legislature and not by any judicial extension or straining of the safe-place rule, or by dividing entire undertakings into different departments or tasks.

Here, it seems to me, the person injured and the one who piled the brick and all concerned in the matter, were members of a crew having to do, generally or particularly, with operating the cupola. Plaintiff's working place was perfectly safe till made unsafe by his fellow-servant by the manner in which the bricks were piled up. In such cases, by a long line of decisions, particularly in the cases above cited, also *Meilke v. C. & N. W. R. Co.* 103 Wis. 1, 79 N. W. 22, and *Pern v. Wussow,* 144 Wis. 489, 129 N. W. 622, the actors are all fellow-servants. If the result is too harsh, and I am inclined to think it is, as I have several times in legal opinions said both for the court and independently, the legislature should wake up to the matter fully, and ought to have done so long ago. True, it made a good though tardy beginning, but the more firmly courts vindicate the law as given to them the more quickly and efficiently will the lawmaking power remedy any defect in it which time and changed conditions have developed or made significant.

I must dissent from the result declared, further, because the amount recovered is too large as fixed by the jury, and error was committed in the way it was then dealt with, because it was not cut low enough, and because it is obvious the trial court in making the reduction did not follow the established rule requiring the reduction to be to an amount as low as any intelligent jury properly instructed could reasonably

be expected to place it. *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 80 N. W. 644; *Heimlich v. Tabor,* 123 Wis. 565, 102 N. W. 10.

I note, in the opinion of the court, it is observed the trial judge and the jury exercised their judgment in fixing the amount, therefore, since it is not manifest the latter placed it too high, such judgment should not be disturbed. In that I am gratified to observe the court recognizes the right and duty of the circuit court under sec. 2878, Stats. (1898), to deal with a verdict as in this case because of the amount being clearly too much, though the verdict be not characterized by passion or prejudice. But I think the court, for the time, failed to give effect to the rule to be observed in such cases to obviate the danger of prejudicially invading the right of trial by jury. That rule is very firmly established. Perhaps this court was first in the field in respect to discovering a safe logical way of justly terminating litigation where erroneously closed, the error being only in an excessive assessment of damages. That it is a very valuable rule, both to private and public rights, and its application at the circuit is to be encouraged, so far as practicable, to speedily close controversies, has been many times said. But difficulty lies often in failure in respect to the standard to be followed, to wit: the lowest amount an unprejudiced jury properly instructed could be reasonably expected to place it; or failure to appreciate the dignity of the constitutional right of jury trial, and perhaps in lapses here sometimes by use of language not requisite to keep in clear light the correct rule.

Thus in *Hanson v. Johnson,* 141 Wis. 550, 557, 124 N. W. 506, the court was moved to say, for a reason for not disturbing the decision of the trial court in reducing a jury assessment of damages, that "the circuit judge . . . has actually passed on the question and reduced the verdict to such an amount as in his judgment is proper." The same idea is carried into the opinion here.

It must be admitted that, to take the judgment of the circuit court, or that of this court as regards the amount of compensation which a plaintiff should have in any case, and make that compulsorily control, is supplanting the judicial judgment for that of a jury, contrary to the constitution. The court, most emphatically, so declared in *Heimlich v. Tabor, supra.* There it was remarked, in effect.: Doubtless unless the trial judge,—in scaling down a verdict and permitting one party to a suit to accept the situation thus created and end the controversy whether his adversary is willing or not,—determines the proper amount from the standpoint of as small a sum as an unprejudiced jury properly instructed would probably give, the language of jurists and text-writers,—forcibly as they condemn such practice—would seem to be unanswerable. Thus, it will be seen, the judgment of the trial court or of this court in such a case as this as to the proper amount of damages, generally speaking, is not a legitimate basis for a compulsory judgment; but after a jury has once dealt with the matter and awarded too large a sum, either through passion or prejudice or manifest error of judgment, the opinion of the trial or of this court in a proper case, as to the lowest amount a jury, properly instructed, would assess the damages, is a legitimate basis for such a judgment.

Now it seems clear to me, the learned trial court did not follow the rule stated and the judgment of this court fails to legitimately acquit of error in that regard, but rather seems to emphasize it, though I must confess there was, doubtless, no thought of doing so. Probably the general idea is that the court below did not, manifestly, fail to observe the right rule, though I must say, in this connection, I fear a different idea may be read out of the court's opinion.

The plaintiff was some forty-seven years of age. Surely he was very badly injured and, as the jury had a right to find, will be permanently incapacitated for ordinary labor, and liable to need an attendant of some sort more or less. In the

very prime of his life the limit of his earning capacity was about $500 per year. That would naturally have grown less after entry into the period of old age. Assuming in his favor his full expectancy and absence of disability complained of, it would not be more than $200 per year in the old-age period, or perhaps an average of $350 per year for the whole life. From the average of four tables of mortality at hand, his period of expectancy at the time of the recovery was twenty-two years. He was awarded $11,000. Yearly interest thereon would greatly exceed his average earning power, leaving at the end the full $11,000 and a considerable accumulation. The $11,000 would purchase an annuity for him of about $700 per year, or twice his average earning power.

The foregoing, it seems, significantly demonstrates that the trial court did not cut the verdict down as low as a fair jury, properly circumstanced, might probably place it. True, the unfortunate plaintiff was entitled to a reasonable amount to compensate for elements of loss not susceptible of determination by any standard but that of sound human judgment; but such judgment should be based on the thought that human suffering cannot really have any money equivalent which is really full without operating as a penalty so onerous upon the wrongdoer whose very wrong, without real moral turpitude, makes the two mutual victims in misfortune, as to be impracticable of enforcement in the social state where men must move about and do business and be subject, necessarily, to their own frailties and those of others. That is recognized in every special system for remedying losses from personal injuries. What, in addition to computable loss, is reasonable under all the circumstances, for past and future pain and those other elements as to which there is no basis for calculation? That is the question. Not what, in the broad sense, will be a full money equivalent for such elements. It seems that the former is the logic of the principle of compensation in such cases, entrenched in the law, and that it should be

made more and more significant as the necessity therefor has become more apparent. This court has said in a case like this:

"Although the defendant may have committed a fault, it is not, for that reason, an outlaw. . . . Society . . . is interested to preserve it against spoliation, by applying to plaintiff's recovery a proper limit of compensation. . . . Doubtless, the underlying idea of the law of damages is indemnity. But . . . absolute indemnity is impossible. The law has no standard by which it can measure indemnity for such injuries in money. The most it aims to do in that regard is to give some just compensation for the damages suffered, which in many, if not in most, cases must fall short of complete indemnity. The just rule to be given to the jury is, such sum as will fairly compensate for the damages suffered—reasonable in amount, and not excessive." *Guinard v. Knapp-Stout & Co. Co.* 95 Wis. 482, 490, 70 N. W. 671.

I can do no better than to quote that language, uttered many years ago and many times referred to. Note the words "such sum as will fairly compensate," not fully do so. Note the idea, that a full money equivalent is impossible, and any effort to attain it must not only be unsuccessful but unjust. The difference between the practicable,—reasonable,—and the full equivalent in dollars, is one of the losses for which there is no remedy.

Applying the logic of the foregoing to this case, I think that a fully informed jury might probably limit the recovery in favor of the unfortunate respondent to the full earning value of his life on the basis of the wages he was getting at the time of the injury and no limitation of his expectancy of years below the average. That would be about $8,000.