DEISENRIETER, Appellant, vs. THE KRAUS-MERKEL MALTING COMPANY, Respondent.

*January 7 — January 28, 1896.*

*Master and servant: Personal injuries: Dangerous process: Insufficiency of special verdict: Immaterial inconsistency.*

1. In an action for injuries sustained by an employee in a malting house by falling against the machinery while overcome by fumes of sulphur which had escaped from the kiln room below, the special verdict, which in respect to the defendant's negligence relates exclusively to its knowledge or obligation to know of the plaintiff's actual situation and danger at the precise time and place of the accident, and which fails to determine the questions whether the sulphur in the manner in which it was used in the business was dangerous to defendant's employees, whether it knew or ought to have known of that danger, and whether it used proper care to prevent accidents by warning its employees or otherwise, is *held* insufficient.

2. Questions, the submission of which was requested by plaintiff, as to whether the defendant was negligent in permitting sulphur fumes to come into that part of the room where plaintiff was at work, and as to what was the proximate cause of plaintiff's injury, should, in some form, have been embraced in the special verdict.

3. An inconsistency in the findings of the special verdict in relation to plaintiff's contributory negligence is immaterial upon his appeal, where, even if all such findings were in his favor, the remainder of the verdict would not sustain a judgment for him.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge.   *Reversed.*

The defendant is a domestic corporation engaged in the business of malting grains. It had and operated a malting house at Milwaukee. On the third floor of that malting house was a machine which in part consisted of shafting and gearing, the latter being known as friction gear, consisting of two rollers working in contact with each other for the purpose of turning or regulating a spool, on which was wound a rope which was used to operate a scraper on the floor, for the purpose of stirring the malt upon the floor so that the air should pass through it, and of removing it to the elevator. The shafting and gearing were left open and unguarded, and were so located as to be in the front and in view of the person operating the machine. They were about four feet above the floor and about one foot in front of a lever which was used to regulate their use. They might be dangerous to the operator if he should become oblivious of their existence and situation, or if, by any misfortune, he should fall against them while in motion. In the process of malting barley, sulphur and salt are burned in the kiln room, with the purpose to have the fumes permeate the mass of the barley, for bleaching it and fitting it better for its ultimate use. These fumes penetrated to all parts of the building, and came to this room on the third floor through holes in the walls for the passage of belts, through crevices, and open doors. The operations in this room create dense dust as the barley is delivered into the room by carriers, is stirred upon the floor and swept from the room by the scraper.

The plaintiff was a brewer of beer, forty-two years old. He had worked several months in this building and in the general business there carried on. He knew the building, and the processes of carrying on the business. He had worked in the different rooms and on the different floors. He was employed for general work about the business. Though he had been mostly engaged in moving the grain on the floor with a shovel, in the process of drying it, he

had at least once been employed in operating this very machinery. On the day of his injury he was operating the machine described. The fumes of the sulphur and the pervasive dust became more intense and persistent of a sudden, so that in a short time — he thinks in about ten minutes — he was overcome by them and fell. In falling his hand fell upon or was pressed against the rollers, was drawn in between them, and was crushed.

These are, in brief, the facts which the evidence tends to establish. There was a special verdict, as follows:

"(1) Was the plaintiff, while in the employ of the defendant, injured in defendant's malt house, on July 28th, 1892? *Answer by court:* Yes. (2) Was the plaintiff overcome by fumes of burning sulphur and salt, by reason whereof he attempted to support himself on a chain, and when reaching for the chain put his hand into the rollers? *A.* Yes. (3) If you answer the second question in the affirmative, did such sulphur fumes escape from the defendant's kiln into the place of accident? *A.* Yes. (4) Did sulphur fumes escape from the kiln into the third story of the malt house, to the place of accident, in sufficient quantity to become dangerous to a person working there at the time of the accident? *A.* Yes. (5) If you answer the second question in the affirmative, was there more fumes of sulphur at the time and place of the injury than was there usually, prior to the injury, while the plaintiff worked at the barley? *A.* Yes. (6) If you answer the fourth question in the affirmative, did the plaintiff know the dangers resulting from the sulphurous fumes at the time and place of the accident? *A.* No. (7) If you answer the fourth question in the affirmative, ought the plaintiff, in the exercise of reasonable care and prudence, to have known the dangers resulting from the sulphurous fumes at the time and place of the accident? *A.* Yes. (8) If you answer the fourth question in the affirmative, were the dangers arising from the sulphurous fumes at the time and

place of the accident one of the ordinary risks of plaintiff's employment? *A.* Yes. (9) If you answer the eighth question in the negative, did the plaintiff assume the risk of the dangers resulting from the sulphur fumes at the time and place of the accident? *A.* ——. (10) Was the plaintiff guilty of a want of ordinary care which contributed proximately to the injury? *A.* No. (11) Was the plaintiff guilty of a want of ordinary care in not abandoning the work he was engaged in at the time and place of the accident in time to avoid injury? *A.* Yes. (12) If you answer the fourth question in the affirmative, did the defendant know that sulphurous fumes escaped from the kiln into the third story of the malt house at the time of the accident? *A.* No. (13) If you answer the fourth question in the affirmative, ought the defendant, in the exercise of ordinary care and caution, to have known that sulphurous fumes escaped from the kiln into the third story of the malt house? *A.* Yes. (14) If you answer either the twelfth or thirteenth questions in the affirmative, did the defendant know that the sulphurous fumes escaping from the kiln into the third story of the malt house at the time of the injury were dangerous to a person at work at the place of the accident? *A.* No. (15) If you answer either the twelfth or thirteenth questions in the affirmative, ought the defendant, in the exercise of ordinary care and caution, to have known that the sulphur fumes escaping from the kiln into the malt house at the time of the accident were dangerous to a person working at the place of accident? *A.* No. (16) Who did the burning of the sulphur at the time of the accident? *Answer by court:* Adolph Piton. (17) Was the person burning the sulphur at the time of the accident guilty of a want of ordinary care in the performance of his work? *A.* No. (18) If the court should be of the opinion that plaintiff is entitled to judgment, at what sum do you assess his damages? *A.* $4,000."

On this verdict a judgment for the defendant was entered, from which the plaintiff appeals.

For the appellant there was a brief by *Wheeler & Wheeler,* attorneys, and *Orren T. Williams,* of counsel, and oral argument by *L. G. Wheeler.*

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *E. P. Vilas.*

NEWMAN, J. It is manifest that the special verdict, as rendered, would not warrant or support a judgment against the defendant. It does not determine sufficient of the material questions of fact against the defendant to show that, as matter of law, it is liable to the plaintiff for his damages. So that, on the verdict as rendered, no judgment other than the one rendered was justifiable or possible. The judgment is right upon the verdict. If the case was properly tried and submitted, so that the verdict can be sustained, there should be affirmance. But if the case against the defendant was not properly tried and submitted, then the plaintiff's motion for a new trial should have been granted upon some of the several grounds alleged, and the judgment must be reversed. So the general question to be considered upon this appeal is whether the issues involved in the trial were fairly to the plaintiff submitted to the jury.

In the examination of this question, first in importance and logical sequence seems to be the question whether the special verdict, as submitted, comprehends all the material issues involved which bear upon the question of the defendant's negligence. The questions relating to this branch of the case are Nos. 12, 13, 14, and 15. By No. 12 it is found that the defendant did not know that the fumes of burning sulphur escaped to the room where the plaintiff was at work, *at the time of the accident;* by No. 13, that the defendant ought to have known it; by No. 14, that the defendant did not know that the sulphurous fumes which were escaping to the room where the plaintiff was working, *at the time of the injury,* were dangerous to a person at work at that

place; and by No. 15, that it was no part of the defendant's duty to know it. These questions seem to have been infelicitous and inadequate to elicit conclusions of the more important issues of fact involved in the case. The more obvious criticism is that they all relate exclusively to the defendant's knowledge, or obligation to know, of the plaintiff's actual situation and danger at the precise *time* and *place* of the accident, limiting the scope of inquiry, and suggesting to the jury that, in the mind of the court, knowledge, or the obligation to know, *at that very time*, was the crucial test in the case. Whereas the test of the defendant's liability rested rather upon its knowledge and responsibility for a train of causes which culminated, at that time, in the plaintiff's accident. The questions themselves were well fitted to divert the consideration, both of the court and the jury, from the more important and controlling considerations to those of mere incidental or minor importance. It would have been more to the purpose to have inquired if the defendant knew, or ought to have known, that the fumes of sulphur burned as part of the process by which its business was carried on would be pervasive of the whole building, and might become so dense and strong as to produce suffocation of employees who were exposed to it, and whether, knowing such danger, it used proper care to prevent accidents by warning its employees or otherwise.

It might have been well, too, to have asked some question calling for a determination of this fact: whether, in the manner in which sulphur was used in the defendant's business, it did create real danger to the defendant's employees. The defendant could not, apparently, be liable, unless it was operating its works in a manner or with appliances which created a real danger, and it must have been a danger imminent to such a degree, at least, that it would have been negligent not to have warned employees who were ignorant of its existence. The defendant could not

be liable for accidents which it could not reasonably anticipate as likely to happen, or from the operation of causes of which it was excusably ignorant. *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141; *Barton v. Pepin Co. Agr. Soc.* 83 Wis. 19. And whether there was danger in this process, and so great danger that it was want of ordinary care not to warn employees against it, is not so clear upon the evidence that the inference may be drawn by the court. For it does not appear that like harm has ever before befallen from a like cause in a similar business.

Something equivalent to these suggested questions should have been submitted. But there is nothing which is substantially equivalent. There is no finding that the process was dangerous, nor anything found from which it can be inferred. In the seventh finding it is found that the plaintiff ought to have known "the dangers resulting;" in the fifteenth, that there was no duty on the defendant to know that the fumes were dangerous. This falls far short of finding that the fumes were dangerous. Something equivalent to an explicit finding on that point seems to be indispensable. So, too, was it negligent not to warn? That depends, in a degree, on the degree of danger. There is some danger in most employments. Negligence bears some relation to the degree of danger. It was a question for the jury under this evidence. These four questions, with their answers, are not, indeed, inharmonious, but they contain little which tends to illuminate the ultimate question whether the defendant is responsible for the plaintiff's damages.

The plaintiff excepted to the submission of the several questions which were submitted in the special verdict, and requested the submission of others, which were refused. Among the questions which he asked to have submitted were these, in substance: Whether the defendant was negligent in permitting the fumes of burning sulphur and salt to come into that part of the room where the plaintiff was at

work. What was the proximate cause of the plaintiff's injury? These questions were pertinent to the issue. Perhaps they were not sufficiently full or definite. But, in some form, the questions suggested by them should have been submitted to the jury.

It is said that several answers of the special verdict relating to the defense of contributory negligence are in conflict with each other. Especially No. 8 is said to conflict with No. 10, and No. 10 is said to be at variance with No. 11. It looks so. But that does not interest the plaintiff upon this appeal. If all that part of the verdict were ignored or stricken out, or were all in his favor, he would still be as far as ever from the judgment which he desires.

For the reasons stated, there must be a new trial.

*By the Court.*— The judgment of the superior court of Milwaukee county is reversed, and the cause remanded for a new trial.