ROBINSON, Respondent, vs. EAU CLAIRE BOOK & STATIONERY COMPANY and another, Appellants.

*April 12 — April 30, 1901.*

*Libel: Pleading: Amendments after trial: Words actionable per se: Instructions to jury: Justification: Evidence: Damages: Court and jury.*

1. Plaintiff was soliciting subscriptions for a directory he contemplated publishing, when there appeared in two newspapers an article headed " A Warning," copies of which in the shape of a circular

Robinson vs. Eau Claire Book & Stationery Co. and another.

letter were mailed by defendants to several of their customers.  In an action for libel, the article, as set forth in the complaint, was to the effect that "certain unscrupulous parties, in making a pretended canvass of the city for a directory, persist in falsely representing" that defendants did "not intend to publish a directory;" that "these untruthful adventurers" knew it was possible for them to secure business *only* by "misrepresentation"; that the people of the city had had experience with "wandering fakirs whose whole capital" was "glowing promises and only object to capture money," and that it was "folly to pay money to irresponsible directory schemers." No objection was made that the complaint failed to allege that the article was published concerning the plaintiff, as prescribed by sec. 2677, Stats. 1898. *Held*, that the circuit court, after trial, properly allowed the complaint to be amended in that regard.

2. Such article was libelous *per se*, although it did not impute a crime, since it directly tended to prejudice the plaintiff in his trade and business.

3. In such case, it was error to instruct the jury to the effect that the defendants would fail on their plea of justification, even if they had proved that the plaintiff had falsely and untruthfully made the statements charged in the libel, unless they went further, and also proved that at the time of making such statements the plaintiff knew "that the defendants did not intend to issue a directory."

4. In such case, evidence of the amount of money invested in plaintiff's business and the receipts arising from his sales; of the amount he expended for board while collecting pay for books delivered; and that plaintiff's directory is copyrighted, is irrelevant and its admission improper.

5. In such case, where the answer admitted mailing copies of the article in question to certain of defendants' customers, but denied that it caused the publication thereof in one of the newspapers, evidence of one of the proprietors of the newspaper that he knew they had some authority to publish the article; that he did not know how they received it, nor who directed them to put it in the paper; and that the defendants might have done so, but he could not remember, is not sufficient to take to the jury the question whether defendants caused such publication.

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Reversed*.

For the appellants there was a brief by *Wickham & Farr*, and oral argument by *James Wickham*.

For the respondent there was a brief by *Teall, Thomas & Teall*, and oral argument by *F. C. Teall.*

CASSODAY, C. J.   The complaint alleges: That in 1899 the plaintiff was engaged in publishing a directory of the city of Eau Claire.   That in February, 1899, the defendants published in two certain newspapers and in a circular letter a certain article alleged to be false and defamatory, headed " A Warning," to the effect that " certain unscrupulous parties, in making a pretended canvass of the city for a directory, persist in falsely representing" that the defendant company did " not intend to publish a directory;" that " these untruthful adventurers " knew full well that it was possible for them to secure business *only* on the basis of " misrepresentation;" that the defendants had repeatedly assured the public, through the press and otherwise, that they should continue to publish the city directory, and that their new volumes would be ready about the 1st day of the next July, after the annual moving season; that the people of the city had experience with " wandering fakirs, whose only capital " was " glowing promises, and only object to capture their money;" that the people wanted the best directory, and that that would be the one issued by them; that it was " folly to pay money to irresponsible directory schemers," when they could be sure of a reliable work at the same or less cost.   The complaint further alleges that on or about February 20, 1899, and upon divers days subsequent thereto, the defendants, for the purpose of injuring the plaintiff in his said business, and to discourage prospective subscribers to his directory, and to injure the plaintiff in his business and good name, falsely, wrongfully, and maliciously composed and caused to be published in the " Leader " and " Telegram," newspapers of general circulation and published at the city of Eau Claire, the false and defamatory article mentioned, and claimed $5,000 damages.

Robinson vs. Eau Claire Book & Stationery Co. and another.

Issue being joined and trial had, the jury returned a verdict in favor of the plaintiff, and assessed his damages at $1,500. On motion of the defendants the court set aside the verdict and granted a new trial, with an option on the part of the plaintiff to remit one half of the verdict, and take judgment for $750 damages and costs, which he did. From the judgment entered thereon for such reduced amount and costs, the defendants bring this appeal.

On the motion for a new trial it was suggested that the complaint failed to allege that the article was published concerning the plaintiff, as prescribed by the statute (sec. 2677, Stats. 1898). But in view of what was alleged, as stated, and that no such objection had been made upon the trial, the trial court very properly allowed the complaint to be amended in that regard.

Within the rules of law so frequently announced by this court as not to require repetition, we must hold that a number of the expressions in the article were libelous *per se.* *Bradley v. Cramer,* 59 Wis. 309; *Street v. Johnson,* 80 Wis. 455; *Buckstaff v. Vaill,* 84 Wis. 129; *Smith v. Utley,* 92 Wis. 133; *Monson v. Lathrop,* 96 Wis. 386; *Candrian v. Miller,* 98 Wis. 167. The article published directly tended to prejudice the plaintiff in his trade and business, and in that respect was actionable, without imputing crime. *Singer v. Bender,* 64 Wis. 169; *Brown v. Vannaman,* 85 Wis. 454, and cases there cited; *Smith v. Utley,* 92 Wis. 136; *Dr. Shoop F. M. Co. v. Wernich,* 95 Wis. 168. While the defendants were at liberty to inform the people of the city that they intended to publish a city directory, any representations to the contrary notwithstanding, yet that did not give them the privilege to publish an article tending to impugn the integrity, the truthfulness, and the honesty of the plaintiff in his trade and business. Such an article published under such circumstances is not privileged. *Rude v. Nass,* 79 Wis. 321; *Brown v. Vannaman,* 85 Wis. 451; *Werner v. Ascher,* 86 Wis. 349.

The industrious counsel for the defendants have taken fifty exceptions to the charge. Some of them are covered by what has been said. Another exception is to a portion of the charge to the effect that the defendants would fail on their plea of justification even if they had proved that the plaintiff had falsely and untruthfully made the statements charged in the libel, unless they went further, and also proved that at the time of making such statements the plaintiff knew "that the defendant company did not intend to issue a directory." This was going further than the statute required. Sec. 2678, Stats. 1898.

The trial court regarded the damages assessed by the jury as excessive, and so compelled the plaintiff to reduce the same one half, or submit to a new trial. Such excessive verdict was the manifest result of admitting a mass of irrelevant and improper testimony. All of such evidence was not objected to, but some of it was. While the publisher of a libel which injures a man's trade and business may be liable for the damages thereby directly caused, yet it does not follow that the difference between the amount of money invested in the business, which the plaintiff in his testimony denominated as his expenses, and the receipts arising from his sales, constituted the true measure of such damages. Serious loss in conducting a new enterprise or business often occurs without the publication of any libel,— especially with an established local competitor in the field. Here the plaintiff's directory books were ready for delivery May 16, 1899; and, to make up the amount of expenses so claimed, the plaintiff included $360 for board from that time to the following September, during which time he was collecting pay for such books delivered. We are unable to perceive how such board bill can be regarded as the direct result of the publication of the libel. Evidence was received, against objection, as to the wealth of the defendant company. At the close of the testimony it was stricken out, but it obvi-

Robinson vs. Eau Claire Book & Stationery Co. and another.

ously had influence with the jury. We perceive no ground for admitting evidence that the plaintiff's directory had been copyrighted. This is an action of libel, and not for infringing a copyright.

The answer admits that the defendants mailed copies of the article in question to certain of their customers, but expressly denies that they caused the publication of the libel in the Leader or the Telegram. Without proving that the defendants, or either of them, caused such publication in either of those papers, the court admitted evidence, against objection, that the libelous article was published twice in February, 1899, in the Eau Claire Telegram, and once in the Eau Claire Leader. The court charged the jury that it had not been proved that the defendants caused the publication in the Telegram, and that no damages should be assessed on that publication, but submitted to the jury the question whether they caused such publication in the Leader. The only evidence tending to prove such publication is the testimony of one of the proprietors and editors of the Leader to the effect that he knew they had some authority to publish the article; that they made no charge for such publication, and were not paid for it; that they were supposed to give all the information and news about the directory; that it was left to their will and discretion as to how much or how little they would say; that he could not remember how they received the article, nor who directed them to put it in the paper; that the defendants might have done so, but he could not remember. We do not think such evidence was sufficient to take the case to the jury on that question,— especially against the flat denial on the part of the defendants.

We do not deem it necessary to further consider the numerous exceptions and objections taken by counsel.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.