CHOPIN, Administratrix, Appellant, vs. COMBINED LOCKS
PAPER COMPANY, Respondent.

*November 27—December 13, 1907.*

*Master and servant: Unsafe places to work: Negligence: Personal in-
juries: Question for jury: Trial: Direction of verdict.*

> In an action to recover for the death of a servant caused by his
> being caught by a set-screw on a line shaft, upon the evidence,
> stated in the opinion, it is *held* to have been error to direct a
> verdict for the defendant.

APPEAL from a judgment of the circuit court for Outa-
gamie county: JOHN GOODLAND, Circuit Judge. *Reversed.*

This is an appeal from a judgment dismissing the plaint-
iff's complaint. Plaintiff is the widow of Michael Chopin,
who was killed January 30, 1906, while in the employ of the
defendant. Deceased was employed as boss machine tender,
having a general supervision of the operation of four paper
machines located upon the second floor of defendant's mill
in Outagamie county, Wisconsin. These machines were
operated by means of belts extending from pulleys upon a
main shaft seventy-five feet long and from four to eight
inches in diameter located upon the first or ground floor.
This shaft ran north and south and passed through metal
castings fastened to perpendicular posts or pillars which
held it some three feet above the floor. Iron collars were at-
tached to the shaft at various places by means of set-screws to
prevent it from working back and forth in the castings. The
opening in the floor through which the belts extended from
the pulleys on the shaft below to the paper machines above
permitted a view of the pulleys and shaft. While at work
upon the second floor on the day in question the general super-
intendent, Thompson, looking through the opening, discov-
ered one of the employees trying to run the belt on one of the
pulleys with his foot, and promptly instructed deceased to

go below and stop the work of putting on the belt in that manner, as he said it was dangerous.   Deceased immediately went below, passed along by the shaft, and ordered the employees who were attempting to put on the belt to desist, stop the engine, and put on the belt with a rope, and almost instantly upon delivering this order was caught by a projecting set-screw, wound around the shaft, and killed.   The set-screw in question extended beyond the surface of the collar about five eighths of an inch, and had been placed there when the shaft was installed some five years prior.   It was not visible when the shaft was in motion, and it appears from the evidence that it was the policy of defendant to have set-screws counter-sunk.   It was established on the trial that deceased had charge of the paper machines upon the second floor, but whether he had charge of the shafting below and the inspection and repairs thereof is disputed.   The negligence alleged is that at the point or place on the shaft opposite the suction pump where deceased was caught there was an iron collar attached to the shaft fastened by a set-screw which extended from two thirds to five eighths of an inch beyond the surface of the collar, and that no guard or barrier had been placed around this set-screw or shaft to protect employees in the mill from coming in contact therewith while in the performance of their duties, and that deceased had no knowledge of the existence of the set-screw, and that defendant negligently suffered said shaft, collar, and set-screw to remain in such unsafe and dangerous condition, and that deceased while in the discharge of his duties and in the exercise of ordinary care was caught and drawn around the shaft and received injuries causing his death; that the injuries were caused by the negligence of the defendant in carelessly failing to warn deceased, and in failing to locate and maintain a suitable guard or protection around said collar, set-screw, and shaft, and in negligently operating said collar, set-screw, and shaft in an unsafe condition, and in negligently and carelessly failing to

provide and maintain a reasonably safe and suitable place for employees while in the performance of their duties, and in failing to properly light that part of the mill in the vicinity of said shaft. After the evidence was in, the court directed a verdict for the defendant, and judgment was entered dismissing the plaintiff's complaint, from which this appeal was taken.

For the appellant there was a brief by *Joseph Chopin*, attorney, and *P. H. Martin*, of counsel, and oral argument by *Mr. Martin*.

For the respondent there was a brief by *Classon & Frank*, and oral argument by *D. G. Classon*.

KERWIN, J. The only errors assigned are (1) the admission and rejection of evidence, and (2) the direction of a verdict for defendant. These errors are considered together in appellant's brief. It is quite clear from the record that the court below was very technical in its rulings concerning the admission and exclusion of evidence and committed error in that regard. Since the judgment must be reversed upon other and more obvious grounds, we shall refrain from discussing this assignment of error, believing that the questions involved under this head are not likely to arise upon another trial.

The important consideration is whether the court erred in directing a verdict for defendant. A verdict was directed upon the ground that the deceased was charged with knowledge of the dangerous condition existing and was chargeable with the duty of reporting such condition, and that the defendant was not chargeable unless the defective condition was reported or brought to its knowledge, and that it could not be held liable for an injury to deceased resulting from a defect which deceased should have reported; and further, that deceased assumed the risk. Upon these questions the court below obviously regarded the evidence undisputed. The

evidence tends to show that it was the custom in this mill to have set-screws counter-sunk so they would not project beyond the collar, and that the set-screw in question was placed at or about the time the shaft was put in several years before the injury. It appears that when the shaft was in motion such condition could not be observed; that the duties of the deceased were principally upon the second floor in charge of the paper machines. On the day in question the superintendent discovered one of the employees trying to run a belt on one of the pulleys with his foot, and, observing that it was a dangerous method of doing the work, he said: "I hastened Chopin down there. I gave him pretty positive instructions." Thereupon deceased immediately went below, passed along the passageway parallel with the shaft to a point near the pulley upon which the employees were attempting to run the belt and ordered them to desist, stop the engine, and put it on with a rope, and almost instantly upon delivering the order was caught on the projecting head of a set-screw in the collar on the shaft, wound around the shaft, and killed. It was fairly a question for the jury under the testimony whether the set-screw was not in the same condition at the time of the injury as when originally placed by the defendant, and if so and was dangerous to employees in the discharge of their duties, the defendant would be liable in failing to furnish a reasonably safe place for its employees to work as well as in failing to safeguard such shafting and set-screw. *Howard v. Beldenville L. Co.* 129 Wis. 98, 108 N. W. 48; *Parker v. Fairbanks-Morse Mfg. Co.* 130 Wis. 525, 110 N. W. 409; *Van de Bogart v. Marinette & M. P. Co.* 127 Wis. 104, 106 N. W. 805; *Guinard v. Knapp-Stout & Co. Co.* 90 Wis. 123, 62 N. W. 625; *Berg v. U. S. L. Co.* 125 Wis. 262, 104 N. W. 60; *Walker v. Simmons Mfg. Co.* 131 Wis. 542, 111 N. W. 694; *Van de Bogart v. Marinette & M. P. Co.* 132 Wis. 367, 112 N. W. 443.

It is contended by counsel for respondent (1) that the de-

fendant was negligent; (2) that the deceased was provided a safe way in which to do his work and chose an unsafe one; (3) that it was the duty of deceased to either repair defects or report them; (4) that deceased was told by the superintendent to have the engine shut down for the purpose of running the belt on to the pulley, and if he had obeyed orders he would not have been injured. It is quite clear that the negligence of the defendant was a question for the jury. From the evidence produced the jury would have been justified in finding that the projecting set-screw was placed at the time the shaft was put in, and that the defendant never furnished a safe place if the set-screw as constructed and existing was dangerous to employees in the discharge of their duties. It is said by counsel for respondent that there was nothing about the operation of the machine which would naturally require workmen to be in a position where they would be in danger from this exposed set-screw, and nothing about the duty deceased was performing at the time of his injury which required him to be in such position. It is quite clear from the evidence that it was necessary for employees at times to be near this shaft in the performance of their duties. The shaft was a main shaft carrying several pulleys, the one upon which the employee was at work at the time of the injury being about three feet from the set-screw in question. But it is claimed that deceased could have gone around the suction pump to the point where the employees were putting on the belt and thus have avoided the place of injury, which was a dangerous place, where he should not have gone because the space was only fourteen and one-half inches wide between the spur gear on the east side of the shaft and the set-screw. But this contention depends upon the width of this space as well as the relative position of this spur gear with the collar and set-screw upon the shaft. The photographs offered in evidence would seem to indicate that the spur gear is opposite the set-screw, so that a person caught

upon the set-screw would probably be within the narrow space, while the drawings put in evidence, and which are doubtless more correct as showing the *locus in quo*, show the spur gear not exactly opposite the collar and set-screw but somewhat farther south, from which it appears that the deceased may have been caught on the set-screw before he had reached the narrow space. In other words, it is not at all clear from the evidence but that the deceased could have been caught on the set-screw before he passed between the spur gear and the shaft. Moreover, the evidence respecting the width of this passageway is not in harmony. One witness testified that the distance between the beam and the cogwheel was two and one-half feet and that there was plenty of room to pass between, and that he had passed through between the shaft and cogwheel while the same were in motion. Another witness in speaking of the position of the spur gear or cogwheel, as it is sometimes called, and the post upon which the shaft was hung, said: "If you just go to the post, you do not go to the cogwheel or suction pump. . . . Unless you pass the machinery or box, you do not go between the cogwheel and post." We think, also, the jury would have been warranted in finding under the circumstances and in view of the fact, as stated by the superintendent, that the employees were engaged in dangerous work in attempting to put on the belt without stopping the engine, that deceased hastened to stop them in that work with a view of afterwards shutting down the engine and then putting on the belt as directed by the superintendent. The evidence shows that the deceased promptly went to the point in question under direction of the superintendent and ordered the employees to desist and shut down the engine. Nor does it appear from the evidence as a matter of law that deceased was charged with the duty of inspecting shafting or machinery upon the first floor or guilty of any contributory negligence in going to the place of injury. There is no direct evidence that deceased knew of

the projecting set-screw. The evidence would warrant the jury in finding that he did not, and that it was the duty of the millwright, if he knew of it, to report and repair such defect. We are cited by counsel for appellant to sec. 1636*jj*, Stats. (Supp. 1906; Laws of 1905, ch. 303), which provides, in effect, that in an action for personal injuries caused by failure to guard or protect machinery as provided in sec. 1636*j*, Stats. (1898), the fact that such employee continues in said employment with knowledge of such omission shall not operate as a defense. But we have not considered it necessary to pass upon the effect of this law, for the reason that in the instant case we are very clear that there was ample evidence to go to the jury upon the question of whether the deceased continued in the employment with knowledge of the unguarded set-screw as well as of other material issues involved. We think the court erred in directing a verdict for the defendant.

*By the Court.*—The judgment is reversed, and the action remanded for a new trial.