Halwas v. American Granite Co. 141 Wis. 127.

HALWAS, Respondent, vs. AMERICAN GRANITE COMPANY, Appellant.

*November 16—December 7, 1909.*

*Master and servant: Unsafe place to work: Pleading: Variance: Amendment: Evidence: Impeachment of witnesses: Cross-examination: Immaterial ' errors: Special verdict: Questions: Sufficiency: Proximate cause: Who are fellow-servants: Assumption of risk.*

1. Under a complaint alleging that a large block of stone which plaintiff was lettering when it fell over and injured him had been negligently set up on the earthen floor of defendant's shop, evidence as to the condition of the ground where the stone stood was competent.

2. The rule that a party cannot impeach his own witness does not preclude him from showing that the testimony of any witness is incorrect or false in a matter material to the issue.

3. In an action for injuries caused by the falling of a large block of stone which plaintiff was lettering, it was not prejudicial error to exclude questions, asked him on cross-examination, as to whether he could think of anything that ought to have been done about the placing of the stone that was not done, whether he knew what was necessary to properly place stones, and whether, from what he noticed at that time as to the placing of stones to be lettered, the one in question needed bracing.

4. The negligence complained of in such action being the failure to furnish a safe place to work, and the defect not being obvious, defendant was not prejudiced by exclusion of questions, on cross-examination of a witness for plaintiff, as to whether blocks put under stones often shift and have to be replaced, and whether the craneman who placed the stones was not at times called to replace them. *Yezick v. Chicago B. Co.* 138 Wis. 342, distinguished.

5. It being alleged in the original complaint that the stone which fell and injured plaintiff was negligently erected "upon the earthen floor" of defendant's shop, and that it sunk the blocks upon which it rested into the earth so unevenly as to throw it out of plumb and cause it to fall, there was no error in allowing an amendment making the complaint read "upon the unsafe and unsuitable earthen floor."

6. It was not error in such case to refuse to submit to the jury at defendant's request a question as to whether there were other places in defendant's shop where the ground was reasonably

safe and where defendant's employees might have banked the stone,—the duty being upon defendant and not upon plaintiff to furnish a safe place.

7. A crane crew whose special duty it was to place in proper and safe position in defendant's shop the stones which were to be cut and lettered represented the master in providing a reason-ably safe place for the cutters and letterers, and hence were not. fellow-servants of a letterer who was injured by the falling of a stone upon which he was working, which had been insecurely set up by such crew without his taking any part in the setting thereof, although it appeared that the letterers called upon the crane crew to place the stones and in some cases, though not as a part of their duty, assisted the crew in that work.

8. The evidence in this case is *held* sufficient to show that the stone by which plaintiff was injured fell because it was not properly and safely put in position in view of the nature of the ground upon which it stood.

9. Plaintiff was not charged with the duty of inspecting the ground upon which the stone was placed and, it not being shown conclusively that he knew of the unsafe condition of the ground,. and it not appearing that such condition was so obvious as to charge him with knowledge of the danger, he cannot be held as matter of law to have assumed the risk.

10. A special verdict finding that plaintiff was injured by the stone falling upon him; that the ground upon which the stone was placed was not reasonably safe; that the blocks upon which it rested were not of sufficient size to make them reasonably safe,. considering the character of the ground; that defendant did not furnish plaintiff with a reasonably safe place to work; that defendant was guilty of want of ordinary care which was the proximate cause of plaintiff's injury; that there was no contributory negligence on the part of plaintiff; and assessing plaintiff's damages,—is sufficient to support a judgment for the plaintiff.

11. Such a verdict is not insufficient on the ground that it fails to show definitely what negligence the jury found to be the proximate cause of the injury, where no request was made for more specific findings upon that subject.

MARSHALL, J., is of the opinion that the decision should be based upon the fact that the working place furnished by defendant—meaning the ground selected, and not including the stone in position thereon—was not reasonably safe for the work in which plaintiff was engaged, and that it is unnecessary to decide whether or not the crane crew were fellow-servants of the plaintiff.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

Action to recover for personal injuries. The plaintiff was in the employ of the defendant as a stonecutter, and at the time of the injury was engaged in lettering a monument or section thereof. The complaint alleges that at and prior to the accident the defendant's plant was provided with a traveling crane for lifting and moving from one part of the shop to another heavy stones and parts of monuments while in the process of manufacture; that a special gang of employees was engaged in this work under the supervision of the foreman, who acted for and in place of defendant; that it was the duty of the defendant to place such stones and monuments in a secure position and to maintain a safe place in which to work upon them; that the defendant erected the stone which caused the injury in such a negligent and careless manner upon the earthen floor of the shop upon blocks neither long enough nor large enough for a stone of such weight, viz., five or six tons; that said monument was not braced nor propped in any manner to keep it in position and prevent it from falling over; that it sunk said blocks into the earth so unevenly as to throw it out of plumb and cause it without warning to tip over onto plaintiff and cause the injury complained of; that after the stone was placed plaintiff was instructed to go to work thereon.

The answer denies generally the negligence of the defendant, and alleges assumption of risk on the part of the plaintiff, and specially denies that the crane mentioned in the complaint was operated by the craneman, assisted by a special gang of employees under the supervision of a foreman representing the defendant to move stones and parts of monuments while in the process of manufacture, or to place the same in position to be worked upon by stonecutters, and denies that such stones were placed in position by a special gang of men under the supervision of a foreman acting for the defendant, and denies that after the stone in question was placed plaintiff

was ordered to go to work upon it; and further alleges that, while the plaintiff did not assist in putting the stone in question in position, it was his duty and he was authorized to give instructions to the employees of defendant in relation to moving and setting up stones upon which he was working, and to give directions to prop or brace them in case they were not properly or securely set up, and that it was plaintiff's duty to assist employees of defendant in setting up stones to be lettered or cut and to give instructions to make them safe and secure.

The issues were tried and the following verdict returned:

"(1) Was the plaintiff injured on April 13, 1904, by a stone falling upon him, in the Russell avenue shop of the defendant?    A. (by the court) Yes.

"(2) Was the ground on which the stone in question rested reasonably safe, considering the nature of the work in hand? A. No.

"(3) Were the blocks upon which the stone which fell rested of sufficient width and length to make them reasonably safe, considering the character of the ground and the nature of the work?    A. No.

"(4) At the time of the injury to plaintiff, did the defendant furnish the plaintiff with a reasonably safe place to work, considering the nature of the work in hand?    A. No.

"(5) Was the defendant guilty of a want of ordinary care which was the proximate cause of plaintiff's injuries? A. Yes.

(6) If you answer question numbered 4 'Yes,' then answer this question: Ought the plaintiff, in the exercise of ordinary care, to have known that the place at which he worked at the time of the injury was not reasonably safe?    A. No.

"(7) Was the plaintiff guilty of any want of ordinary care which proximately contributed to produce his injuries? A. No.

"(8) If the court should be of opinion that the plaintiff is entitled to recover, at what sum do you assess plaintiff's damages?    A. $4,500."

At the close of the plaintiff's evidence defendant moved for a nonsuit, and at the close of all the evidence for a directed

verdict, which motions were denied. After verdict the defendant made the usual motions for judgment on the verdict, for judgment notwithstanding the verdict, that the answers of the jury to the verdict be changed and the verdict amended, that the verdict be set aside, and for a new trial, all of which motions were denied and the motion of the plaintiff for judgment in his favor granted, and judgment was ordered in favor of the plaintiff. Judgment was entered in favor of the plaintiff accordingly for the sum of $4,500 damages found by the jury, and costs, from which this appeal was taken.

For the appellant there was a brief by *O'Connor, Schmitz & Wild,* and oral argument by *A. J. Schmitz.*

*George E. Morton,* attorney, and *C. H. Van Alstine,* of counsel, for the respondent.

The following opinion was filed December 7, 1909:

KERWIN, J. The evidence produced upon the trial tends to show that the plaintiff was in the employ of the defendant as a letterer and stonecutter in what was known as the Russell avenue shop, which is about 300 feet long north and south and from seventy-five to eighty feet wide east and west. The floor had been leveled by taking about six inches of the ground from the south end to the north with scrapers. The plaintiff at the time of the accident was engaged in lettering various sections of a large monument known as the Kosciusko monument. After completing the first die or section he proceeded to work upon the section which had been set up near the middle of the shop on the west side thereof by the craneman and his two helpers under the direction of a foreman of the shop about three days before the accident. The stone which fell and injured plaintiff had been placed upon blocks and was five feet ten inches wide, seven feet eight inches high, and twenty-two inches thick, and appeared to stand plumb and solid. Large stones like the one in question were raised and moved by a traveling crane operated by a craneman, who was

assisted by two others called "lumpers." The cutter or letterer gave directions when he wanted a stone placed in position, and if placed wrong the crane crew was signaled and the stones were changed according to his directions. When the foreman was not present the cutter often directed what blocks should be used, and his directions were obeyed, and he sometimes helped in the placing of the blocks. The crane traveled upon bridgework on supports and was used for moving stones about the shop. It traveled north and south and the carriage moved east and west. The ground where the monument stood was dark loam and soft, into which the front end of the east block supporting the monument had sunk from four to six inches. The place where the shop was located had been a cornfield, was without sod, and composed of sand and gravel at the south end. The duty of the crane crew was to set up monuments to be lettered. It consisted of the craneman, Tiett, and the "lumpers," Voss and Slack. Hempe was superintendent, and it was his duty to see that the letterers were kept busy at cutting or lettering, and it was the aim, so far as possible, to have the job ready for the letterers so they would lose no time between one job and another. It was no part of the plaintiff's duty to set up the stones. No stone had been known to fall over before the one in question fell. Stones were usually lettered while lying flat on the ground; but the one in question was standing for the reason that the letterer could not get around it as well if lying on the level. This stone was set up under the direction of the superintendent, Hempe, who selected the place where it was to stand and directed the work while being set; plaintiff not being present and having nothing to do with setting it. After it was set Hempe ordered plaintiff to go to work upon it. After it was set, Tiett, the craneman, spoke to Hempe, superintendent, and told him that he thought it would be better to place the stone up against the column base and brace it from the top; but Hempe said it was all right, and no more was said about it.

The stone was set on the west side of the building at about the center, the face to be lettered to the north.    The plaintiff noticed nothing wrong with the setting of the stone.

Several errors are assigned by appellant which will be treated in the order presented.

1. The admission of evidence of one Lohr, respecting the condition of the ground where the stone stood, is complained of for incompetency under the pleadings.    It will be seen from the statement of facts that the negligence complained of was the negligent and careless manner in which the stone had been set up in the shop.    The allegations would seem to be broad enough to admit evidence of the character of the ground, since the question is involved as to whether the stone was properly set up so as to be safe.    Moreover, the complaint was afterwards amended so as to make it more specific in this regard.    The case appears to have been tried upon the theory that the ground upon which the stone stood was unsuitable and unsafe.    Complaint is also made because the court permitted the plaintiff to deny certain statements made by Lohr, on the ground that plaintiff could not impeach his own witness and deny a fact drawn from Lohr.    The rule that a party cannot impeach his own witness does not go to the extent of shutting the mouth of the party against whom a hostile witness testifies; but he may show that the evidence of any witness is incorrect or false in a matter material to the issue. *Richards v. State,* 82 Wis. 172, 51 N. W. 652; *Smith v. Ehanert,* 43 Wis. 181; *Kohl v. Bradley, Clark & Co.* 130 Wis. 301, 110 N. W. 265.    We find no error under this head.

2. The plaintiff was asked the following questions on cross-examination:

"*Q.* Can you think of anything now, from what you saw there, that ought to have been done about the placing of this stone that was not done?

"*Q.* Do you know what is necessary to properly place or put up stones?

"*Q*. From what you noticed at that time about the placing and putting up of stones to be lettered, such as this stone was which you were asked to letter, did it need bracing?"

Objection to the first question was sustained on the ground that it was improper in form and argumentative, and to the other two on the ground that they were not proper cross-examination. Without entering into any discussion upon these rulings, it is sufficient to say that we find no prejudicial error in the ruling below. Nor do we find any prejudicial error in the rulings sustaining objections to questions asked plaintiff's witnesses Berlick and Voss on cross-examination. While the evidence of Berlick was, when first offered, excluded, it was afterwards, in substance, admitted. Moreover, the court intimated that such evidence might be proper in defense; but it was not offered by defendant in making its case. The questions put to Voss and ruled out could not have prejudiced the defendant. They inquired whether blocks put under stones often shift and have to be replaced, and whether the craneman was not at times called to replace the stones. Appellant relies on *Yezick v. Chicago B. Co.* 138 Wis. 342, 120 N. W. 247; but in that case it will be seen that the defect was open and obvious and the court held that plaintiff assumed the risk. In the instant case the negligence complained of is failure to furnish a safe place, and the defect was not open and obvious. As to the ruling complained of respecting the evidence of the witnesses Seitz and Rathman, no prejudicial error was committed.

3. Error is assigned in allowing an amendment to the plaintiff's complaint. It is at least very doubtful whether the amendment was necessary, but, if so, it was properly allowed. The original complaint alleged that the stone in question was negligently erected upon the earthen floor of the shop, and that the stone sunk the blocks upon which it rested into the earth so unevenly as to throw it out of plumb and cause it to fall. The plaintiff moved to amend by inserting the words "unsafe

and unsuitable," so as to make it read "upon the unsafe and unsuitable earthen floor." There was no error in allowing the amendment. *Miller v. Aram,* 37 Wis. 142; *Jarvis v. N. W. M. R. Asso.* 102 Wis. 546, 78 N. W. 1089; *Post v. Campbell,* 110 Wis. 378, 85 N. W. 1032; *Robinson v. Eau Claire B. & S. Co.* 110 Wis. 369, 85 N. W. 983.

4. Error is assigned in refusing to submit the following question to the jury:

"Were there other places in the defendant's shop than the place where the stone in question was set, where the ground was reasonably safe, considering the nature of the work, in hand, and where the employees of the defendant might have banked the stone in question?"

There was no error in refusing to submit this question. The issues in the case were fully covered by the verdict submitted. Even if submitted and answered in the affirmative it would not have strengthened the defendant's case. The duty resting upon the defendant was to furnish a safe working place. The facts in the instant case do not bring it within the rule of the case cited by appellant. *Van den Heuvel v. Nat. F. Co.* 84 Wis. 636, 54 N. W. 1016. No duty rested upon the plaintiff here to furnish a safe place. That duty was upon the defendant. *Eingartner v. Ill. S. Co.* 94 Wis. 70, 68 N. W. 664; *Howard v. Beldenville L. Co.* 129 Wis. 98, 108 N. W. 48; *Parker v. Fairbanks-Morse Mfg. Co.* 130 Wis. 525, 110 N. W. 409.

5. It is further contended that there is no evidence proving or tending to prove that the defendant was guilty of any want of ordinary care which was the proximate cause of the plaintiff's injury. This contention is based upon the theory that the plaintiff and the other employees who set up the stone were engaged in a common enterprise and were therefore fellow-servants. A great many decisions of this court are cited by appellant upon this proposition. We shall not attempt to

discuss the numerous cases referred to by appellant. They all go to the general proposition laid down in the books that:

"To constitute fellow-servants it is not necessary that the negligent workmen causing the injury and the one injured should both be engaged in the same particular work. It is sufficient if they are employed by the same master, under the same control, and performing the duties and services for the same general purpose." *MacCarthy v. Whitcomb,* 110 Wis. 113, 85 N. W. 707.

The difficulty is not so much with the rule of law as with the application of it. There is quite a diversity of opinion among courts as to who constitute fellow-servants. In this state the rule is well settled that who constitute fellow-servants does not depend upon the grade or rank of the servant whose negligence caused the injury, but upon the nature of the service being performed by the servants in which the negligence occurs. *Wiskie v. Montello G. Co.* 111 Wis. 443, 87 N. W. 461; *Rankel v. Buckstaff-Edwards Co.* 138 Wis. 442, 120 N. W. 269. We have the well-recognized rule in this state that, after the safe place and safe appliances are furnished by the master, servants engaged in common pursuit under the same general control in carrying out details respecting the work of operating the machinery may be fellow-servants. A familiar illustration of this rule is found in *Okonski v. Pennsylvania & O. F. Co.* 114 Wis. 448, 90 N. W. 429, cited by appellant. To the same effect is *Miller v. Centralia P. & W. P. Co.* 134 Wis. 316, 113 N. W. 954, where the master had fully performed his duties in furnishing all appliances necessary for lighting the mill, and the negligence consisted in turning off the light and thereby rendering the place dark and unsafe. Such negligence was held that of a fellow-servant who was engaged in a customary operative detail, and therefore his negligence was not the negligence of the master in failing to furnish a safe working place. *Williams v. North Wis. L. Co.* 124 Wis. 328, 102 N. W. 589. We think the present case is not ruled by the authorities above cited and relied upon by ap-

pellant.   The plaintiff was not engaged in a common employ-
ment with the crane crew, nor was the work of setting large
stones in position for the letterers to work upon a mere opera-
tive detail.   When a master has performed his duty in fur-
nishing a reasonably safe place, reasonably safe appliances,
competent co-employees, and given proper warning of latent
dangers, he may, doubtless, commit to the employees the de-
tails of the work; but he cannot escape the duty of furnishing
a reasonably safe place and reasonably safe appliances by in-
trusting such duty to another.   *Williams v. North Wis. L.
Co., supra.*   The doctrine that the duty rests on the master
to furnish a reasonably safe working place, and that such
duty cannot be delegated, has been so often declared, dis-
cussed, and applied by this court that nothing further need be
said upon the general rule.   *Peschel v. C., M. & St. P. R. Co.*
62 Wis. 338, 21 N. W. 269; *Jarnek v. Manitowoc C. & D.
Co.* 97 Wis. 537, 73 N. W. 62; *Howard v. Beldenville L. Co.*
129 Wis. 98, 108 N. W. 48; *Parker v. Fairbanks-Morse Mfg.
Co.* 130 Wis. 525, 110 N. W. 409.

Upon the established facts we think it clear that the crane
crew and the plaintiff were not fellow-servants.   The crane
crew represented the master in providing a reasonably safe
working place for the cutters and letterers, of which the plaint-
iff was one.   True, the crane crew was called upon by the
letterers to place the stones for them; but the special duty of
the crane crew was to place the stones in proper and safe posi-
tion.   While in some cases it appears that the letterers assisted
in setting the stones, it does not appear to have been any part
of their duty, and in the instant case plaintiff took no part
whatever in setting the stone which fell upon him causing the
injury.   The jury found upon sufficient evidence that the
ground upon which the stone stood was not reasonably safe,
nor the blocks upon which the stone rested of sufficient width
and length to make them reasonably safe, considering the
character of the ground and the work, and that the defendant

did not furnish the plaintiff with a reasonably safe place to work. It is therefore established that the defendant failed in its duty to furnish a reasonably safe working place. The instant case comes fairly within the doctrine of numerous cases in this court, and especially within the rule laid down in *Cadden v. Am. S. B. Co.* 88 Wis. 409, 60 N. W. 800; *Eingartner v. Ill. S. Co.* 94 Wis. 70, 68 N. W. 664; *Jarnek v. Manitowoc C. & D. Co.* 97 Wis. 537, 73 N. W. 62; and *Lipsky v. C. Reiss C. Co.* 136 Wis. 307, 117 N. W. 803.

In *Cadden v. Am. S. B. Co., supra,* the plaintiff was injured while working as a riveter by reason of the improper and dangerous manner in which a scaffold had been suspended. The scaffolding was supplied by the defendant and placed in position by men employed by defendant for that purpose, and the riveters took no part in constructing the scaffold, rendered no assistance, and gave no directions, except to indicate where it should be placed, and it was held that the scaffold builders were not fellow-servants with the plaintiff. At page 419 of 88 Wis. (60 N. W. 802) the court said:

"But, under the finding, it is clear that the plaintiff was not to have, and did not have, anything to do with placing the scaffold, but that this duty was devolved on the defendant, and whether by custom or by agreement is not material. The fact that the plaintiff was to indicate where it was to be placed, or had a right to object that it was not properly suspended or adjusted, does not affect the result. He certainly had a right to call on the defendant to do its duty, and to object that it had not been properly performed. Under the facts found, in view of the duty of the defendant to suspend and adjust the scaffold properly, it became, in our opinion, a place, as distinguished from a mere appliance, which the defendant was bound to furnish the plaintiff, though changing in location with the exigencies of the work; and it was its duty to see that it was in a reasonably safe and proper condition to enable the plaintiff to work thereon. The plaintiff did not take the risk of the carelessness of those who were selected by the defendant and undertook to do its duty, even though they

were the servants of the same master.   This view of the case
is in accordance with former decisions of this court and a
great preponderance of authority."

In *Eingartner v. Ill. S. Co.* 94 Wis. 70, 68 N. W. 664, this
court held that a "carpenter gang," whose duty it was to re-
place planks about a machine after their removal for the pur-
pose of attaching new rolls, were not fellow-servants of one
employed to oil the machinery, and the negligence of such
carpenter gang in replacing the planks was the negligence of
the master.   At page 79 of 94 Wis. (68 N. W. 667) this
court said:

"When the master undertakes to furnish the servant a place
to work, with the preparation of which place the servant has
nothing to do, then it is the master's duty to furnish a reason-
ably safe place to work, and this duty cannot be delegated;
and the servant who prepares such place for work is not, in
the eye of the law, a fellow-servant with the other."

It is further insisted by counsel for appellant that there is
no proof showing what caused the stone to fall; but, as we
have seen, it was the duty of the defendant to set the stone in
a reasonably safe position, and there is ample evidence to sup-
port the finding that it did not do so.   It appears that the
block upon which the stone rested sunk several inches into the
ground, and, moreover, the craneman notified the foreman
that the stone was not securely set up.   The cause of the fall
cannot be said to be one of conjecture, even if this were suffi-
cient to defeat the plaintiff; but, on the contrary, there is
ample evidence that the stone fell because not properly and
safely put in position in view of the condition of the ground
upon which it stood.   *Parker v. Fairbanks-Morse Mfg. Co.*
130 Wis. 525, 110 N. W. 409; *Lipsky v. C. Reiss C. Co.* 136
Wis. 307, 117 N. W. 803.   Nor can it be said as matter of
law that the plaintiff assumed the risk.   The shop in which
the accident occurred was a new shop, and it does not appear
that the plaintiff was so familiar with the character of the soil
constituting the floor that we can say as matter of law that he
knew the danger of setting the stone on the blocks in the man-

ner in which it was set. There was evidence that parts of the ground in the shop were soft, while other parts were much harder and substantial. The plaintiff was not charged with the duty of inspection, and it does not appear that the defective and unsafe condition of the ground was so obvious as to charge him with knowledge of the danger. *Chopin v. Combined L. P. Co.* 134 Wis. 35, 114 N. W. 95. The jury found that the plaintiff was not guilty of any want of ordinary care which proximately contributed to produce his injury, and such finding is supported by the evidence.

The appellant further complains of the verdict for insufficiency, but we cannot see, under the rules laid down by this court, that it is subject to the criticism. *Deisenrieter v. Kraus-Merkel M. Co.* 92 Wis. 164, 66 N. W. 112; *Howard v. Beldenville L. Co.* 134 Wis. 644, 114 N. W. 1114; *Mauch v. Hartford,* 112 Wis. 40, 87 N. W. 816.

Complaint is made that the findings of the jury leave in doubt what negligence the jury found to be the proximate cause of the injury. The defendant made no request to find as to the question, except as to question No. 2½ heretofore considered. If counsel for defendant desired more specific findings upon proximate cause it should have asked them. The verdict is set out in the statement of facts and is sufficient to support the judgment, especially in view of sec. 2858m, Stats. (Laws of 1907, ch. 346), and the repeated decisions of this court. *Bates v. C., M. & St. P. R. Co.* 140 Wis. 235, 122 N. W. 745. We regard further discussion under this head unnecessary.

We find no prejudicial error in the record.

*By the Court.*—The judgment of the court below is affirmed.

The following opinion was filed December 21, 1909:

MARSHALL, J. The vital question is, Did appellant furnish respondent a reasonably safe place to work? The jury

found in the negative, I understand, because the ground selected was unsuitable. The master furnished that. There is no doubt about it. The working place did not include the ground with the stone in position ready for the lettering. The effort to support the judgment on the theory that it did, and that the crane crew in placing the stone in position were not fellow-servants of respondent, because they, in so doing, were performing the work of the master, was unnecessary and it seems illogical.

After correctly stating the rule that all servants of a common master, regardless of rank or grade, engaged—some in one department and some in another, some at one detail of the work and some at another—to accomplish a common object, are fellow-servants, the application to the facts seems quite forced. Were not the crane crew and the respondent under the same general control, working to accomplish the general object of bringing new material onto the premises, manufacturing the same into finished products, and removing the same as shipments occurred? Why was not the placing of a stone in position, lettering it, and bringing it upon the ground to be lettered, all details of the general work in which all were engaged? Does this case not carry the doctrine of *Cadden v. Am. S. B. Co.* 88 Wis. 409, 60 N. W. 800, and similar cases, in view of *Wiskie v. Montello G. Co.* 111 Wis. 443, 87 N. W. 461, and similar cases, so far as to turn the fellow-servant law into much confusion? It was as much the duty of appellant to use reasonable care to keep respondent's working place reasonably safe as it was to furnish it. Therefore, according to the logic of the opinion, if the crane crew, or the crew bringing stone to the premises or taking away finished products, had so conducted themselves while respondent was doing his work as to render his working place unsafe, such conduct would have been that of the master.

The real cause of the mischief was the negligence, if there were any as the jury found, in furnishing the unsuitable ground upon which to do the work. Such being the case, why

·endeavor to support the judgment against the claim of appellant that the crane crew were fellow-servants of respondent in the work of preparing the stone, by claiming that they were not because they were merely preparing the working place? If that be so, how could we avoid holding, if the stone had fallen from the trucks while being brought to the place where the cranemen found it, and injured respondent, that such truck crew were not fellow-servants?

It seems the case should have been grounded, as it was wholly by the verdict, on the proof that.the working·place, referring to the ground, was not reasonably safe for the operation respondent was engaged in.